**E. COHEN**

v.

**UNIROYAL, INC., et al.**

**Civ. A. No. 76–2989.**

United States District Court,
E. D. Pennsylvania.

Nov. 28, 1978.

---

1. This is the technique employed with respect to the effect of a master's report in a jury case under Fed.R.Civ.P. 53.

Richard D. Greenfield, Greenfield & Schoen, P. C., Sterling H. Schoen, Jr., Bala Cynwyd, Pa., for plaintiff.

Henry W. Sawyer, III, Drinker, Biddle & Reath, Alan P. Klein, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

This is a securities fraud class action brought by certain stockholders of Uniroyal, Inc. against Uniroyal and its accountants, Haskins & Sells.[1] Uniroyal has refused to answer certain interrogatories propounded by the plaintiff, claiming that the materials sought are irrelevant, privileged under both the attorney-client and work product doctrines, and that compliance would entail undue burden and expense. The class plaintiff now moves to compel answers to his interrogatories.

The standard of relevance for purposes of discovery is not a stringent one. The Federal Rules require only that the information sought appear "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). This requirement has been liberally construed, and relevance has been recognized wherever there is "*any possibility* that the information may be relevant to the subject matter of the action." In re Folding Carton Antitrust Litigation, 76 F.R.D. 420, 431 (N.D.Ill. 1977) (emphasis in the original). Even an overly broad request for information—the long-interdicted "fishing expedition"—may be permitted under Rule 26 as long as there lies nestled anywhere in the heap of requested surplusage some small morsel of relevant information. See e. g., Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Banco Nacional De Credito Ejidal, S.A. v. Bank of America Nat'l Trust & Sav. Ass'n, 11 F.R.D. 497 (N.D.Cal. 1951).[2]

■ The information sought by this plaintiff class representative includes all legal opinions and all attorney-client communications concerning each of the corporation's allegedly fraudulent activities, as well as extensive information about Uniroyal's relationship with its counsel, detailing every lawsuit, administrative proceeding and any other services performed by counsel on behalf of Uniroyal. Although the interrogatories are certainly broad in scope, all of the requested material may tend, in varying degrees, to demonstrate what and when Uniroyal knew about each issue raised in the complaint. All of the interrogatories, then, are capable of uncovering some evidence that may be useful in establishing the central element of Uniroyal's scienter, and are therefore relevant within the meaning of Rule 26(b)(1). See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

■ Under Rule 26(b)(1), however, relevance is only one element of discoverability; privilege is another. Even the most relevant information may not be discoverable if it is properly subject to a claim of attorney-client or work product privilege.

The major question presented by the present motion concerns the effectiveness of the attorney-client privilege when asserted by a corporation's management against its stockholders. In such a case, there appear to be two levels of inquiry: first, whether the information sought is in fact privileged and second, if a valid claim of privilege exists, whether there is "good cause" for overriding it. Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971); Evmar Oil Corp. v. Skelly Oil Co., No. 76-4039 (C.D.Cal. Jan. 31, 1978).

■ The attorney-client privilege protects from disclosure confidential communications made for the purpose of obtaining a lawyer's professional advice and assistance. McCormick, Evidence, § 95; 8 Wigmore,

---

1. Plaintiff alleges that the defendant has violated section 10(b) and rule 10b–5 of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5 (1975), respectively.

2. The inefficacy of the fishing expedition objection for general discovery purposes, however, does not signify its total obsolescence. As will be seen *infra*, a determination of whether a party is simply fishing may be germane to an appraisal of a claim of attorney-client privilege.

Evidence, §§ 2292, 2311. It applies to corporate as well as individual clients. *Radiant Burners, Inc. v. American Gas Ass'n,* 320 F.2d 314 (7th Cir. 1963). However, since it stands as an obstacle to the investigation of the truth, the privilege should be construed no more broadly than is necessary to effectuate its purpose—to promote the freedom of consultation that is essential to full and effective legal representation. 8 Wigmore, *supra,* § 2291.

Interrogatories Nos. 95–104, which request many of counsel's legal opinions and related attorney-client communications, fall clearly within the scope of the privilege. However, giving the privilege the restrictive construction urged by Wigmore, *supra,* I cannot say that the other information sought by the class plaintiff is similarly protected. The remaining interrogatories seek disclosure of the identity of Uniroyal's lawyers, the identity of persons retaining, supervising or consulting with those lawyers, the identity of documents recording or referring to the lawyers or certain of their work, the dates that services were rendered, the hours spent and the overall duration of the attorney-client relationship, and a description of the nature of the work performed (Interrogatories Nos. 94, 105–14). These interrogatories inquire only into the factual circumstances surrounding the attorney-client relationship, and do not threaten to reveal the substance of any confidential communications. *See Colton v. United States,* 306 F.2d 633, 637 (2d Cir. 1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). The attorney-client privilege, strictly construed, need not foreclose inquiry into the general nature of a lawyer's activities on behalf of a client, the conditions of the lawyer's employment, or any of the other external trappings of the relationship; the privilege is concerned only with confidential communications, not with the structural framework within

which they are uttered. *See In re Semel,* 411 F.2d 195, 197 (3d Cir.), *cert. denied,* 396 U.S. 905, 90 S.Ct. 220, 24 L.Ed.2d 181 (1969); *Wirtz v. Fowler,* 372 F.2d 315, 333 (5th Cir. 1966); *In re Wasserman,* 198 F.Supp. 564, 566–67 (D.D.C.1961).[3] Consequently, only Interrogatories Nos. 95–104 call for privileged attorney-client communications, so that the second level of my inquiry—whether there is sufficient good cause to override the privilege—is limited to those specific interrogatories.

The "good cause" test was spawned by the Fifth Circuit in *Garner, supra,* in an attempt to cope with the special problems that arise when the attorney-client privilege is asserted by a corporation's management against its stockholders. On the one hand, management is under a legal obligation to serve the best interests of the corporation, and since the corporation is owned by its stockholders, it would seem anomalous to deny stockholders access to information ostensibly gathered for their own ultimate benefit. On the other hand, the complete removal of the attorney-client privilege from the grasp of the corporation client (based on the supposed identity between a corporation and its stockholders), *see, e. g., Fischer v. Wolfinbarger,* 45 F.R.D. 510 (D.C.Ky.1968), would expose corporations to harassment suits by minority stockholders and a possible deterioration of candid attorney-client communication and effective corporate management. The *Garner* court concluded that these countervailing interests of the corporation and its stockholders are both valid but must be weighed against each other in order to determine whether there is good cause for the corporation's interest in confidentiality to yield to the stockholders' interest in full disclosure. Of the considerations appropriate to this balancing of interests, the court stated:

---

**3.** Uniroyal itself recognizes that the attorney-client privilege may not encompass such nonconfidential matters as the amount of an attorney's fee, the terms and conditions of the attorney's employment and the hours and dates that services were performed on behalf of a client.

(Interrogatories Nos. 94 & 111–12). Nevertheless, Uniroyal objects to these interrogatories on grounds of irrelevance and undue burden— grounds that are separately disposed of elsewhere in this opinion. *See* Defendant's Memorandum at 17 n. 17.

There are many indicia that may contribute to a decision of presence or absence of good cause, among them the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.

*Garner v. Wolfinbarger, supra,* 430 F.2d at 1104.

■ Uniroyal argues that *Garner* is inapplicable to the present case because the class as certified comprises only "purchasers," rather than "shareholders" as specified in *Garner.* This literal distinction does not deter the basic rationale of *Garner,* which is that "management judgment must stand on its merits, not behind an ironclad veil of secrecy which under all circumstances preserves it from being questioned by those for whom it is, at least in part, exercised." *Garner v. Wolfinbarger, supra,* 430 F.2d at 1101. The class certified in this case does not include any putative purchasers, but encompasses only those purchasers that actually bought Uniroyal stock and thereby became stockholders. That the special relationship of management-to-stockholder existed as to all class members for some peri-

od, however brief, thrusts those class members ineluctably within the scope of the protection afforded by the *Garner* doctrine. It is true that at the time of the allegedly fraudulent conduct the class members had not yet purchased stock and had therefore not yet entered the favored "mutuality of interest" relationship with management. *Id.* The fact remains, however, that the private cause of action for fraud under § 10(b) was not complete until the class members had incurred some damages. No actionable fraud existed, in other words, until the "purchasers" had become stockholders by purchasing Uniroyal stock at prices that had been improperly inflated as a result of the management's alleged misconduct. It is appropriate, then, to apply *Garner's* test of good cause to the present case.

■ Viewing the facts at hand in light of the enumerated *Garner* criteria, there appears to be a good cause to compel the defendant's answers to the privileged interrogatories, in the following respects:

(1) The plaintiff class is substantial in number and in overall holdings: plaintiff asserts that during the class period, 15,-000,000 common shares were traded and more than 75,000 holders of record were involved.[4]

(2) The class plaintiff's bona fides appear honest and his claims substantial, well-documented and obviously colorable.

(3) The plaintiff class representative has a high degree of need for the information sought in Interrogatories Nos. 95–104, since this information is perhaps the most direct and effective means of demonstrating Uniroyal's state of knowledge about its various allegedly fraudulent activities. Documentary proof of scienter is often unavailable or unpersuasive, so that words exchanged in supposed confidence between a party and its counsel

---

4. *Garner* does not require unanimity of stockholder action or even, as the defendant suggests, that the class inquiring into privileged communications comprise a majority of the corporation's stockholders. Where unanimity or substantial unanimity does exist, however,

the court did suggest that the attorney-client privilege would be immediately overcome without further inquiry into other elements of good cause. *Garner v. Wolfinbarger, supra,* 430 F.2d at 1101.

offer greater hope than most other forms of evidence of uncovering the truth about that party's state of mind. Furthermore, when the information sought relates to the corporation's state of knowledge about its existing legal problems, the most likely sources of that information are the corporation and its counsel, so that this class plaintiff could not reasonably be required to inquire into the availability of the information from other sources.

(4) The complaint alleges numerous instances of wrongful action by the corporation—action rendered illegal but not criminal by the federal securities laws.

(5) The communications sought relate to the corporation's past conduct and the legal significance of accomplished acts, rather than to prospective conduct still in the sensitive planning phase.

(6) The communications sought do not concern the litigation itself.

(7) Interrogatories Nos. 95–104 do not at all suggest that the class plaintiff is blindly fishing for information. Because the scope of each interrogatory is clearly limited to a specific area of Uniroyal's alleged misconduct, and because the class plaintiff requests only documents prepared by lawyers to be identified in the defendant's response to Interrogatory 94, the materials requested are, in terms of both subject matter and author, sufficiently identifiable for purposes of this inquiry into good cause.[5]

I conclude therefore that because half of the class plaintiff's interrogatories are not subject to a claim of attorney-client privilege, and because there is good cause to override the privilege that attaches to the other half, the attorney-client privilege does not bar disclosure of any of the information requested in these interrogatories.

■ I conclude in addition that the work product privilege is inapplicable to the present interrogatories, since none of the information sought appears to have been prepared in anticipation of this litigation. *See Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

■ Finally, defendant objects to the "undue burden and expense" involved in producing the called-for "thousands of documents," arguing that "where relevancy is borderline and the burden of complying great, these factors may act in combination to support the objection." 4 Moore's Federal Practice ¶ 26.56[1], at 26–135. The only burden to which Uniroyal specifically objects is that of determining the dates that services were rendered and the hours spent by counsel on those dates on behalf of the corporation. These matters are certainly of more than borderline relevance to the question of what and when Uniroyal knew about each issue raised in the complaint. Moreover, determination of the hours and dates that services were rendered should be conveniently ancillary to the investigation of other matters such as the nature of the services and the identity of the lawyers involved, so that the additional burden of producing the hours and dates will be tolerable and within the predictable scope of ordinary discovery. Consequently, defendant's objections to the burden of producing this evidence are deemed insufficient and unpersuasive.

Because these interrogatories have ultimately been determined to be relevant and neither privileged nor unduly burdensome, the defendant must now be compelled to answer them.

---

**5.** It is not appropriate here to consider whether the class plaintiff is blindly fishing with respect to interrogatories other than Nos. 95–104, since inquiry into that and other elements of good cause is useful only where the materials sought have first been determined to constitute privileged attorney-client communications.