Manouchehr **SHIRVANI**, et al., Plaintiffs,

v.

**CAPITAL INVESTING CORPORATION, INC.**, et al., Defendants.

Civ. No. B–81–441 (EBB).

United States District Court, D. Connecticut.

Sept. 26, 1986.

---

Linda P. Francois, Cooper, Whitney & Cochran, New Haven, Conn., for plaintiffs.

Jonathan Katz, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, Conn., for defendants Guy Owens, George Jorgensen.

William J. Doyle, Wiggin & Dana, New Haven, Conn., for defendant Lewis A. Hurwitz.

## RULING ON PLAINTIFFS' MOTION TO COMPEL

ARTHUR H. LATIMER, United States Magistrate.

This securities fraud case arises from investments made by the plaintiff Iranians in the two defendant American companies. Plaintiffs have moved to compel discovery from individual defendants Owens and Jorgenson, principal company officers, and co-defendant Hurwitz, counsel to both corporations. The central and most difficult dispute involves defendants' claim of attorney-client privilege.

■ Attorney Hurwitz in the first instance adequately supplied a foundation for invoking the privilege—i.e., through his submissions under oath that withheld communications did relate to confidential attorney-client exchanges concerning proper legal advice. See, e.g., *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1036 (2 Cir.1984). Plaintiffs have in turn relied chiefly on concepts of shareholder discovery rights announced in *Garner v. Wolfinbarger,* 430 F.2d 1093 (5 Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971), an influential decision which allowed shareholders an exception to corporate claims of attorney-client privilege when sufficient "good cause" factors, see *id.,* 430 F.2d at 1104, could be demonstrated in the context of suit against the company "on charges of acting inimically to stockholder interests", *id.* at 1103. That rather vague "good cause" exception, however, was ill-defined in origin and has been troublesome in application. If the *Garner* rule can be best understood as resting on underlying notions of joint representation, see *id.* at 1103, or of a properly assumed mutuality of interest, as in fiduciary relationships, cf. *id.* at 1101, clear-cut analysis and consistent application remain elusive. Recourse to a *Garner* "good cause" test, for example, has occasionally been permitted when no fiduciary relationship was yet in existence, as in the case of stock purchasers who became shareholders "at prices that had been improperly inflated as a result of the management's alleged misconduct", *Cohen v. Uniroyal, Inc.,* 80 F.R.D. 480, 484 (E.D.Pa.1978). When the *Garner* rationale is more clearly confined to an existing relationship, yet extended to fiduciary situations generally, see, e.g., *Quintel Corp., N.V. v. Citibank, N.A.,* 567 F.Supp. 1357, 1361–1364 (S.D.N.Y.1983), the logic of fiduciary duty concepts might then suggest that the attorney-client privilege exception should be made absolute, without need even to show "good cause", cf. *Helt v. Metropolitan District Commission,* 113 F.R.D. 7, 9–11 (D.Conn.1986). The *Garner* problem is perhaps that the shareholder or other owed a duty of trust be-

comes too readily and artificially recognized as the "client" for purposes of privilege.

Although corporate management is expected to act ultimately for the shareholder's benefit, a hasty resort to *Garner* concepts will confuse who corporate counsel's clients realistically are, and ignore the genuine need of management in the ordinary course for confidential communication and advice. When the policy basis for attorney-client privilege is carefully considered, then although "[f]iduciary relationships may create special duties that require ... unusual or special care", it is still the case that "[t]hat is more, not less, reason to give fiduciaries full opportunity to consult openly with counsel", Saltzburg, "Corporate Attorney-Client Privilege in Shareholder and Similar Cases: *Garner* Revisited", 12 Hofstra L.Rev. 817, 847 (1984). Indeed, a curtailment or confusion of traditional privilege concepts eventually may not lead to more endpoint disclosure at all, but result instead in less open and candid attorney-client communication in the first place. An uncertain and unpredictable rule, moreover, "or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all", *Upjohn Co. v. United States*, 449 U.S. 383, 393, 101 S.Ct. 677, 684, 66 L.Ed.2d 854 (1981).

On further reflection, there seems no sufficient reason to craft such a special exception to attorney-client privilege in order to safeguard appropriate shareholder interests in any event. Traditional privilege, after all, has never protected the outright corporate misconduct which would be the core of any genuinely appealing *Garner* claim, cf. *Garner, supra* at 1102–1103, and the proper disclosure test is no vague "good cause" checklist review or uncertain balancing process.

Without sacrificing important public interests in maintaining open communication between lawyer and client generally, shareholders do possess adequate disclosure rights under long-established limits to the attorney-client privilege in cases of demonstrable wrongdoing—i.e., the privilege exception recognized when there are "communications in furtherance of contemplated or ongoing criminal or fraudulent conduct", *In re Grand Jury Subpoena, supra* at 1038. See Saltzburg, *supra* at 837–839. The crime-fraud exception, however, sensibly demands no mere allegation of misconduct but a "prima facie" or "probable cause" showing of grounds for "a prudent person [to] have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud", *In re Grand Jury Subpoena, supra* at 1039. In addition, the wiser course may usually be to require some such showing which is independent of the very communications sought, cf. *United States v. Shewfelt*, 455 F.2d 836, 840 (9 Cir.), *cert. denied*, 406 U.S. 944, 92 S.Ct. 2042, 32 L.Ed.2d 331 (1972), so that extraordinary proceedings like *in camera* submission and study are not automatically or "routinely accepted", *In re John Doe Corp.*, 675 F.2d 482, 490 (2 Cir. 1982), after a bare assertion of fraud.

■ Plaintiffs do alternatively invoke the crime-fraud exception, but have as yet little more to offer than generalities and conclusory assertion. In more specific terms, attorney Hurwitz is said to have attended meetings of corporation officers with prospective investors at plaintiff Shirvani's home in Iran, and that plaintiff's affidavit quotes another defendant's statement that counsel had "cautioned [co-defendant] George [Jorgenson] about discussing or making statements about the value of ... [the defendant companies'] stock, since no outside evaluation of the stock had been made". Yet the depiction of that incident, the only one noted on the point in the brief of plaintiff's counsel, is most inconclusive; plaintiff Shirvani's own affidavit, for example, annexes a follow-up report from attorney Hurwitz to company directors which indicates that defendant Jorgenson had indeed on his own or on counsel's advice then told the prospective group that "if they wish to purchase any stock in

the various corporations, that the figure that he was quoting to them was highly inflated and did not reflect the true value of the stock in the corporations". Absent a more focused and substantial demonstration of fraud, the claim of crime-fraud exception must fail.

 This does not mean that all documents listed by defendant Hurwitz as within the attorney-client privilege are protected from pretrial disclosure at this point. Counsel has furnished an index identifying fifteen documents, eight of which consist of correspondence between attorney Hurwitz and a co-defendant corporation or its principal officers, items typically protected and here properly claimed as privileged. Three other items comprise pre-suit correspondence between attorney Hurwitz and plaintiffs' own earlier attorney, and the four remaining documents consist of a corporate resolution subsequent to plaintiffs' investment, a proposed stock repurchase agreement between plaintiffs and the companies, and two related promissory note forms. All seven of the latter documents are patently outside the scope of privilege for confidential lawyer-client communications, and appear linked to unsuccessful settlement negotiations. While compromise offers and the like would not be admissible as such at trial, Rule 408, Fed.R. Evid., that rule itself is not a total bar to any use whatsoever of all settlement-linked information, and it is not certain that these seven items could not "lead to the discovery of admissible evidence", Rule 26(b)(1), Fed.R.Civ.P., so that pretrial disclosure should be made.

On the existing state of the record, plaintiffs' pending motion to compel is accordingly granted as to the seven documents just mentioned, and otherwise denied without prejudice. Privilege is by no means the only discovery issue, with counsel at odds as well over the claimed overbreadth and cumulative or marginal nature of various discovery requests by plaintiffs, for example, cf. Rule 26(b)(1), Fed.R.Civ.P., or the disputed responsive claim of defendants that adequate disclosure opportunity exists through access to documents made available, cf. Rule 33(c), Fed.R.Civ.P., or that depositions are more appropriate than interrogatories for far-ranging and detailed inquiry. As to all such matters, counsel are to reconsider positions and needs, then to confer fully, cf. Local Rule 9(d)4, and may thereafter request a comprehensive discovery and scheduling conference, cf. Rule 16(b) and 26(f), Fed.R.Civ.P.

### ORDER

ELLEN B. BURNS, District Judge.

The ruling of the magistrate is approved and so ordered, absent objection.