# Agster v. Barmada

354

C.P. of Allegheny County, no. GD98-10088.

*James H. Webster,* for plaintiff.
*Samuel W. Braver,* for defendants.

WETTICK, *J.,* October 21, 1999—The subject of this opinion and order of court is plaintiff's motion to compel production of documents. This motion raises an issue that the Pennsylvania appellate courts have never addressed: whether, in a shareholder suit against the corporation, a corporation may assert the attorney-client privilege to protect communications with corporate counsel. In the present case, the issue arises in litigation involving a closely held corporation.

Plaintiff is a former employee of a professional corporation which provided medical services. He commenced his employment with defendant corporation in 1981. At that time, defendant-physician was the sole shareholder of defendant corporation. In 1984, plaintiff

entered into a stock purchase agreement under which he acquired 40 percent of the stock.

During the period from 1982 to July 1993, plaintiff and defendant were the only physician employees of defendant corporation. At a November 30, 1984 shareholders' meeting, plaintiff was elected a director of the corporation. Plaintiff and defendant were the only members of the board of directors at all times thereafter until the annual meeting of the corporation in November 1995.

Plaintiff alleges that defendant corporation through defendant, acting as president of the corporation, entered into an employment agreement dated July 20, 1993 with a third physician. This was done without the authorization of the board of directors and the agreement was never approved or considered by the board of directors. Thereafter, defendant directed surgery, consultations, and patients away from plaintiff and to the third physician.

In May 1995, defendant informed plaintiff of his intention to dissolve defendant corporation and to commence a new medical practice with the third physician. On October 20, 1995, plaintiff was forced to retire from the practice of medicine because his workload and responsibilities continued to diminish as a result of the unilateral actions taken by defendant. On June 30, 1996, defendant liquidated, sold, or otherwise transferred the assets of defendant corporation, and failed to distribute any of the proceeds of the sale to its shareholders (*i.e.,* plaintiff and defendant).[1]

---

1. Defendants deny these allegations. In their pleadings, they allege that it was necessary to hire the third physician because the revenues of the medical practice were declining, plaintiff had failed to take positive steps in response to new competition, and certain hospital officials were reluctant to have plaintiff perform surgery in their

In Count I, plaintiff alleges that defendant, as president and majority shareholder of the corporation, breached his fiduciary duty to plaintiff, as the sole minority shareholder, by entering into the employment agreement with the third physician and by directing surgery away from plaintiff and to the third physician. Count II is a breach of fiduciary duty claim based on defendants' winding down the corporation's operations without formally dissolving the corporation, thereby driving plaintiff from the corporation and diminishing the value of his stock. Count III is a breach of contract action in which plaintiff alleges that defendant corporation breached its employment agreement with plaintiff by reducing his salary. Count IV is a breach of contract action in which plaintiff alleges that both defendants breached the stock purchase agreement by defendants' failure to pay plaintiff 40 percent of the value of the defendant corporation. Count V is a claim for an accounting. In Count VI, plaintiff seeks a declaratory judgment as to the terms of the agreement under which plaintiff purchased 40 percent of the corporate stock. Count VII is an action seeking reformation of provisions of corporate minutes that purportedly reflect the terms of the stock purchase agreement. In Count VIII, plaintiff seeks to rescind the stock purchase agreement and a return of the payments made for the corporate shares.

In response to plaintiff's discovery requests, defendants have filed a privilege log which describes the documents they have refused to produce on the ground of

---

hospitals. Defendants also allege that plaintiff voluntarily terminated his employment and has received, except for two installment payments due to him on later dates, all money to which he is entitled.

attorney-client privilege.[2] It is plaintiff's position that defendants must produce these documents because the attorney-client privilege does not cover communications between any corporate shareholder and corporate counsel in litigation between shareholders of a closely held corporation.

Under Pennsylvania case law, a communication is not protected by the attorney-client privilege unless it meets the criteria set forth in the oft-cited case of *United States v. United Shoe Machinery Corp.,* 89 F. Supp. 357, 358-59 (D. Mass. 1950) (Wyzanski, J.):

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." See *Commonwealth v. Mrozek,* 441 Pa. Super. 425, 428, 657 A.2d 997, 998 (1995); *Hopewell v. Adebimpe,* 18 D.&C.3d 659, 660-61, 129 P.L.J. 146, 147 (1981), and cases cited therein.

Communications between corporate counsel and a corporate president come within the scope of the attor-

---

2. I am attaching to this opinion as attachment 1 the first page of the privilege log because it is a format that I would encourage counsel to use.

ney-client privilege even under the most stringent control group standard.[3] See *Monah v. Western Pennsylvania Hospital,* 44 D.&C.3d 513, 135 P.L.J. 341 (1987), and cases cited therein. Consequently, if plaintiff was only a corporate employee suing his corporate employer (*i.e.,* if plaintiff was not a shareholder of defendant corporation), the following communications described in the privilege log would be protected by the attorney-client privilege:[4] P014-P016—fax of draft letter regarding a summary of discussions between defendant and the third physician; P018-P022—letter regarding plaintiff; P088-P099—draft of letter regarding position for a third physician with handwritten attorney notes (distributed only to defendant); P104-P111—letter regarding dissolution of joint practice (distributed only to defendant); P113-P114—letter regarding plaintiff; P115-P118—fax cover letter with draft of letter from defendant to third physician regarding a summary of discussions; P119-P120—memorandum regarding April 11, 1995 telephone conversation with defendant; P210-P216—letter regarding defendant corporation and plaintiff; P217-P221—internal Buchanan Ingersoll memorandum regarding dispute with plaintiff—telephone conference with defendant; P280-P288—letter regarding dissolution of joint prac-

---

3. In Pennsylvania, the burden of proof is on the party opposing the assertion of the attorney-client privilege to establish that the communications for which the privilege is claimed are outside the scope of the privilege. See *In re Investigating Grand Jury of Philadelphia County No. 88-00-3503,* 527 Pa. 432, 440, 593 A.2d 402, 406 (1991), and cases cited therein. Consequently, since plaintiff has not questioned the information in the privilege log, I will assume that the information is accurate.

4. At oral argument, plaintiff's counsel stated that plaintiff was not raising the crime fraud exception.

tice (delivered only to defendant); P289-P296—letter regarding dissolution of joint practice with handwritten attorney notes (delivered only to defendant); P315-P323—letter regarding position for third physician (distributed only to defendant); P437-P443—draft letter concerning dissolution of partnership (delivered only to defendant); and CA1562-CA1568—draft letter regarding equity position for third physician (distributed only to defendant).[5]

However, the present case involves a plaintiff who was more than a corporate employee. He is also a 40 percent shareholder of the corporation. Plaintiff contends that by virtue of his status as a shareholder, he should be characterized as a client. He contends, in other words, that corporate counsel's communications to any corporate officer should be deemed to be communications to all persons who own the corporation.

Plaintiff's status as a shareholder raises two issues: (1) may the privilege be invoked in this litigation under a standard attorney-client privilege analysis and (2) if the privilege is applicable under a standard attorney-client privilege analysis, should the law recognize an exception to the attorney-client privilege based on plaintiff's status as a shareholder.

I.

Most of the courts that have considered the applicability of the attorney-client privilege in a lawsuit brought

5. Other documents described in the privilege log are outside the scope of the attorney-client privilege. These include communications between corporate counsel and a corporate representative who was not described as a corporate official and communications with or distributed to the third physician.

by a shareholder against the corporation begin their analysis by deciding whether or not to apply the *Garner* rule. The case of *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir. 1970), was a class action brought by shareholders against a corporation and corporate officers based on alleged violations of federal and state security laws and on common-law fraud. The plaintiffs sought access to communications between corporate counsel and corporate officials. The Fifth Circuit, applying federal law, stated that a fundamental condition of any privilege is that the "injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation." *Id.* at 1100, quoting 8 Wigmore, *Evidence* §2285 at 527. The court stated that the problem before it concerned the balancing of interests between the injury resulting from disclosure and the benefit gained from the correct disposal of litigation in this situation in which "the client asserting the privilege is an entity which in the performance of its functions acts wholly or partly in the interests of others, and those others, or some of them, seek access to the subject matter of the communications." *Id.* at 1101.

In considering what injury would inure to the attorney-client relationship by the disclosure, the court stated:

"Corporate management must manage. It has the duty to do so and requires the tools to do so. Part of the managerial task is to seek legal counsel when desirable, and, obviously, management prefers that it confer with counsel without the risk of having the communications revealed at the instance of one or more dissatisfied stockholders. The managerial preference is a rational one, because it is difficult to envision the management of any

sizable corporation pleasing all of its stockholders all of the time, and management desires protection from those who might second-guess or even harass in matters purely of judgment." *Id.*

The court also discussed the reasons against permitting management to assert the attorney-client privilege: management does not manage for itself. The beneficiaries of the actions of management are the shareholders. Management has duties that run ultimately to the benefit of the shareholders. Management may have interests adverse to some or all of the stockholders. The obligations that run from the corporation to the shareholders must be given recognition in determining the applicability of the privilege.

After considering these competing interests, the court concluded that corporate management is not barred from asserting the attorney-client privilege in litigation in which shareholders contend that corporate management has failed to protect shareholder interests. However, shareholders may defeat the privilege upon a showing of good cause. The court developed the following standard for determining whether shareholders have established good cause:

"There are many indicia that may contribute to a decision of presence or absence of good cause, among them the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of

doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons." *Id.* at 1104.

A majority of the courts that have considered this issue have followed *Garner*. See for example, *Fausek v. White,* 965 F.2d 126 (6th Cir. 1992); *J.H. Chapman Group Ltd. v. Chapman,* 1996 WL 238863 (N.D. Ill. 1996); *Gottlieb v. Wiles,* 143 F.R.D. 241 (D. Col. 1992); and *Cohen v. Uniroyal Inc.,* 80 F.R.D. 480 (E.D. Pa. 1978). Other courts have rejected the concept of a conditional privilege; they have ruled that the privilege is absolute. See for example, *Bushnell v. VisCorp,* 1996 WL 506914 (N.D. Cal. 1996); *Milroy v. Hanson,* 875 F. Supp. 646 (D. Neb. 1995); *R.J. Lefkowitz v. Duquesne Light Co.,* 1998 WL 169273 (W.D. Pa. 1998); *Shirvani v. Capital Investing Corp. Inc.,* 112 F.R.D. 389 (D. Conn. 1986); *Hoiles v. Superior Court,* 157 Cal. App. 3d 1192 (Cal. Ct. App. 1984); and *Tail of the Pup Inc. v. Webb,* 528 S.2d 506 (Fla. Dist. Ct. App. 1988).

There are two parts to the *Garner* ruling. First, the court held that the attorney-client privilege may be asserted. Next, the court held that the privilege is conditional—it gives way upon a showing of good cause.

For reasons that I will discuss in part II of this opinion, the *Garner* holding that corporate management may assert the attorney-client privilege in shareholder litigation against the corporation is helpful in analyzing shareholder litigation generally but it does not address issues

unique to closely held corporations. For reasons that I will discuss in part III of this opinion, the *Garner* holding, that in shareholder litigation, the attorney-client privilege is subject to a cause shown exception is inconsistent with Pennsylvania case law's application of the attorney-client privilege.

## II.

I agree with the *Garner* court's rejection of the argument that the attorney-client privilege can never be asserted in shareholder litigation against the corporation. Shareholders' interests do not necessarily coincide, so managers cannot always make decisions that are consistent with the personal interests of each shareholder. Part of a manager's responsibility is to confer with counsel before making decisions that may have legal ramifications. In many instances, a manager who is properly doing his or her job would be reluctant to seek legal advice if communications with counsel can be revealed to any shareholder who seeks this information.

When corporate counsel is providing legal advice to a corporate manager, corporate counsel is responsible for giving advice that is consistent with the interests of the corporate entity. If there is a conflict between the interests of the entity and any of its constituents—including the corporate manager who is seeking legal advice—corporate counsel must represent the entity. See Rule 1.13 of the Rules of Professional Conduct.

When corporate managers own only a small percentage of the corporate stock, the law can be somewhat comfortable in characterizing communications between corporate counsel and corporate management as communications made for the purpose of furthering the col-

lective interests of the shareholders. Consequently, an analysis that treats only the corporation as the client for purposes of protecting the confidentiality of communications between corporate counsel and management in lawsuits by individual shareholders is consistent with principles of corporate law that a corporation is to be operated by its board of directors and its corporate managers whom the board hires.

There are at least two significant differences where the litigation involves a closely held corporation. First, corporate counsel may have had a relationship with the shareholder who has brought suit during the time period in which the communications which the shareholder seeks were made. Second, in all likelihood, the corporate managers with whom corporate counsel communicated are significant shareholders in the corporation. In *Garner*, on the other hand, it appears that the corporate managers were not major shareholders and corporate counsel had a working relationship only with the corporate managers. Consequently, the *Garner* holding that corporate management may assert the attorney-client privilege in shareholder litigation against the corporation does not resolve the issue of whether the privilege may be asserted where the litigation involves a closely held corporation.

A court may adopt an absolute rule that corporate counsel for a closely held corporation is deemed to be jointly representing each of the shareholders. If a court adopts such a rule, shareholder litigation involving a closely held corporation would always be governed by the rule that an otherwise privileged communication made to a client, that relates to matters of common interest, is not privileged as between the co-clients in subsequently adverse

proceedings between them. Proposed Restatement of the Law Governing Lawyers §125.[6]

Clearly, this rule that communications are not privileged as between co-clients will apply to the situation in which each of the shareholders is actively involved in the management of the corporation and the shareholders and corporate counsel reasonably expect that important information that corporate counsel acquires from, or provides to, any shareholder will be communicated to the other shareholders. This rule will also apply where each of the shareholders communicates with corporate counsel in matters involving the corporation and the relationship between corporate counsel and the shareholders is similar to the relationship between corporate counsel and co-clients. In these situations, the communications are not privileged because these communications were never intended to be confidential as between the shareholders. The ground rules involving communications with counsel—either articulated or assumed—are that counsel will not choose sides or withhold information from any shareholder.

Many closely held corporations function in the manner described in the above paragraph. However, it is probably as common for closely held corporations to function in entirely the opposite manner: A majority shareholder runs the business. The majority shareholder shares very little information with the other shareholders. All communications between the corporation and corporate counsel are between the majority shareholder and corporate counsel. Corporate counsel has no rela-

---

6. Restatement (Third) of the Law, The Law Governing Lawyers. (Proposed final draft no. 1, March 29, 1996.)

tionship with the other shareholders. This frequently occurs where family members or employees have received a minority interest in a corporation, but it is clear from the outset that the corporation will not be operated as a shared enterprise. It would appear that the present case fits into this category.

In this situation, the reasonable expectations of the minority shareholders, the majority shareholder, and corporate counsel are that communications between corporate counsel and the majority shareholder which the majority shareholder wants to be confidential will not be furnished to any other shareholder. Thus, the role that corporate counsel is performing is no different from the role that corporate counsel performs when representing a publicly held corporation. Consequently, the attorney-client privilege should apply for the same reasons that it applies to communications between corporate counsel and the management of a publicly held corporation unless it makes a difference that the corporate manager is also an owner of the corporation.

Obviously, the corporate manager who owns a substantial portion of the corporate stock is not a neutral decision-maker. There is a potential for conflicts of interest between the corporate manager and the other shareholders over a wide range of business decisions.

For closely held corporations, the primary concern of corporate law is that the controlling shareholder operate the corporation in a manner that advances only what the law recognizes as the legitimate interests of controlling shareholder. While the law may refer to the controlling shareholder as having a fiduciary duty to serve the best interests of the corporation, the law, in fact, recognizes that a majority interest entitles the majority shareholder

to exercise his or her control, as long as it is exercised in a manner that is not considered to be overreaching. In other words, it makes no sense to look to fiduciary law because the majority shareholder is not required to place the interests of the minority shareholders ahead of his or her interests. Instead, the law requires only that the majority shareholder not engage in overreaching. See Lawrence E. Mitchell, *The Death of Fiduciary Duty in Close Corporations,* 138 U. Pa. L. Rev. 1675 (1990).

The purposes of the attorney-client privilege are served by protecting confidential communications between corporate counsel and the controlling shareholder because there is an important role for counsel—curbing actions on the part of the majority shareholder that may give too much weight to his or her interests. The law addressing corporate governance is complicated; it is not realistic to assume that lay people will, on their own, have a proper understanding of the law that is intended to shape their behavior. Without legal advice, controlling shareholders are not in a position to give appropriate consideration to the interests of minority shareholders.[7]

It is argued that corporate counsel, paid with corporate funds, should not be responding to the question of the majority shareholder "How generous do I have to be?" However, this argument does not directly involve the attorney-client privilege; instead, it raises the question of when can corporate counsel take sides.

This should depend on the expectation of the parties. A lawyer owes duties of confidentiality and loyalty to

---

7. Under the crime fraud exception, the attorney-client privilege does not apply where the majority shareholder has used the lawyer's services for the purpose of devising strategies that the law does not permit.

the client. Where corporate counsel's only relationship with the corporation is his or her relationship with the dominant shareholder, the minority shareholders know that they must retain separate counsel to protect their personal interests if they have concerns about the operation of the corporation.

The rule that the privilege may not be asserted in litigation involving co-clients of the same attorney is premised on a presumed intent of the co-clients that information is to be disclosed to all of them. The rule does not apply where the co-clients have a different understanding. See Proposed Restatement of the Law Governing Lawyers §25 cmt. c. Consequently, the co-client rule should not apply unless the shareholders had a reasonable expectation that they were being jointly represented.

Other courts have recognized that corporate counsel, for a closely held corporation, is not automatically deemed to have an attorney-client relationship with each shareholder by virtue of his or her position as corporate counsel. In *Skarbrevik v. Cohen, England & Whitfield,* 231 Cal.App.3d 692 (Cal.Ct.App. 1991), a legal malpractice action by a 25 percent shareholder against corporate counsel was dismissed because corporate counsel did not have an attorney-client relationship with the 25 percent shareholder. In that case, corporate counsel allegedly developed for the controlling shareholders a plan to dilute the plaintiff's interests in the corporation. The court said that the plaintiff had no expectations that corporate counsel would protect his interests because he had no interaction with corporate counsel. In *Felty v. Hartweg,* 523 N.E.2d 555 (Ill.App.Ct. 1988), a minority shareholder's lawsuit against corporate counsel, based on counsel's alleged failure to disclose misconduct on

the part of the majority shareholders, was dismissed because corporate counsel's fiduciary obligations do not extend to minority shareholders of a closely held corporation. Compare *Rosman v. Shapiro,* 653 F. Supp. 1441 (S.D.N.Y. 1987), where the court ruled that corporate counsel could not represent a 50 percent shareholder in a suit instituted by the other 50 percent shareholder; both shareholders had jointly consulted with counsel so it was reasonable for each shareholder to believe that corporate counsel was his own individual attorney.

I began my discussion by asking whether we should have an absolute rule that in closely held corporations corporate counsel represents all shareholders. The adoption of this absolute rule would mean that the dominant shareholder who does not want his or her communications with corporate counsel furnished to the other shareholders must retain (and pay for) his or her own outside counsel whenever the legal advice that is sought involves matters in which the interests of the shareholders may diverge. There is no legal justification for such a rule. There are many matters involving the management of a closely held corporation where the interests of the shareholders may not coincide. For example, on as simple an issue as deciding if bonuses are paid in January rather than in December, the income tax considerations of the majority shareholder may differ from those of the minority shareholders. There is no reason why the majority shareholder—rather than the corporation—should be required to pay counsel fees for legal services that are sought in connection with his or her management of the corporation. As I previously discussed, an arrangement whereby the communications between corporate counsel and the dominant shareholders are confidential is

consistent with the reasonable expectations of those minority shareholders who do not anticipate having any relationship with corporate counsel. Furthermore, it is preferable for the dominant shareholder to obtain legal advice from an attorney who has an obligation to the corporation (*i.e.,* an ethical and perhaps legal obligation to furnish advice that provides those protections to the minority shareholders that the law recognizes) rather than from an attorney who has no obligations to anyone other than the majority shareholder.

## III.

Since I have ruled that various communications between defendant and corporate counsel are privileged, I next consider whether the privilege should be absolute or whether it should be subject to the good cause exception created in the *Garner* opinion.

Pennsylvania has a stronger attorney-client privilege than the privilege recognized in those jurisdictions that use a balancing approach.[8] The Pennsylvania Supreme Court has never recognized a qualified attorney-client privilege. Under Pennsylvania case law, the privilege is absolute if the purposes of the privilege are served by permitting the assertion of the privilege.

The Pennsylvania Supreme Court has consistently issued rulings that have preserved the integrity of the attorney-client privilege. See generally, *In re Investigat-*

---

8. Pennsylvania is one of the few jurisdictions in which the burden of proof is on the party challenging the assertion of the privilege. See n.3 at page 358 of this opinion. In most jurisdictions, including the federal courts, the burden is on the party asserting the privilege. See Paul R. Rice, *Attorney-Client Privilege in the United States* §11.9 (Lawyers Cooperative Publishing 1993).

*ing Grand Jury, supra; Commonwealth v. Maguigan*, 511 Pa. 112, 511 A.2d 1327 (1986); *Estate of Kofsky*, 487 Pa. 473, 409 A.2d 1358 (1979). In the case of *In re Investigating Grand Jury, supra* at 438-39, 593 A.2d at 405, the Pennsylvania Supreme Court, citing *Commonwealth v. Maguigan*, 511 Pa. at 124, 511 A.2d at 1333, said that "the roots of the attorney-client privilege are firmly entrenched in our common law, described fittingly as '. . . the most revered of our common-law privileges.' " The purpose of the privilege "is to create an atmosphere that will encourage confidence and dialogue between attorney and client . . . . The intended beneficiary of this policy is not the individual client so much as the systematic administration of justice which depends on frank and open client-attorney communication." *In re Investigating Grand Jury, supra* at 439-40, 593 A.2d at 406. (citations omitted) In *Estate of Kofsky, supra* at 482, 409 A.2d at 1362 (citations omitted) (footnote omitted), the court said "the privilege is not concerned with prejudice, the better ascertainment of the truth, or the reliability of attorney-client communications. . . . Rather, the privilege is grounded in a policy entirely extrinsic to protection of the fact-finding process; its purpose is to foster a confidence between client and advocate that will lead to a trusting and open attorney-client dialogue."

A qualified attorney-client privilege is inconsistent with the rulings of the Pennsylvania Supreme Court that the purpose of the privilege is to guarantee the confidentiality of an attorney-client communication. Thus, I reject plaintiff's contention that plaintiff may obtain communications protected by the attorney-client privilege upon a showing of good cause.

## IV.

While the *Garner* opinion frames the issue in terms of the availability of the attorney-client privilege in shareholder litigation against the corporation, the opinion may be read as follows: (1) the attorney-client privilege protects from disclosure to shareholders confidential communications between corporate management and corporate counsel and (2) there may be instances, based on an analysis of the law governing corporations, in which corporate management will not be permitted to assert the privilege on behalf of the corporation.

If *Garner* is read in this fashion, the issue is whether Pennsylvania corporate law imposes restrictions on the ability of corporate management to assert the attorney-client privilege and under what circumstances. The *Garner* indicia for good cause has no foundation in Pennsylvania corporate law. Plaintiff did not cite any principles of corporate law that would impose restrictions on management's right to assert the privilege in this litigation.[9]

For these reasons, I enter the following order of court:

## ORDER

Upon consideration of plaintiff's motion to compel, it is hereby ordered that: (1) the communications described at pages 358-59 of this opinion are covered by the attorney-client privilege and (2) within 20 days, defendants shall furnish the remaining documents to plaintiff.

_____

9. I recognize that plaintiff's counsel has not specifically addressed this issue because *Garner* is ordinarily cited for the proposition that the attorney-client privilege is only a qualified privilege in litigation brought by shareholders against the corporation. Obviously, the parties are not foreclosed from raising new issues that were not readily apparent before my ruling.