[J-26AB-2018] [MO: Baer, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| PITTSBURGH HISTORY AND LANDMARKS FOUNDATION, A PENNSYLVANIA NON-PROFIT CORPORATION; LANDMARKS FINANCIAL CORPORATION, A PENNSYLVANIA NON-PROFIT CORPORATION; HENRY P. HOFFSTOT, JR.; DAVID E. BARENSFELD; PETER H. STEPHAICH; PATRICK R. WALLACE; ALEXANDER SPEYER; AND HENRY P. HOFFSTOT, III | : : : : : : : : : : : | No. 53 WAP 2017<br><br>Appeal from the Order of the Commonwealth Court entered April 21, 2017 at No. 113 CD 2016, vacating the Order of the Court of Common Pleas of Allegheny County, Civil Division, entered September 21, 2015 at No. GD 13-23355, and remanding.<br><br>ARGUED: April 11, 2018 |
| v. | : : : : | |
| ARTHUR P. ZIEGLER, JR.; MARK S. BIBRO; JACK R. NORRIS; PITTSBURGH HISTORY AND LANDMARKS FOUNDATION, A PENNSYLVANIA NON-PROFIT CORPORATION; AND LANDMARKS FINANCIAL CORPORATION, A PENNSYLVANIA NON-PROFIT CORPORATION | : : : : : : : : : : : : | |
| APPEAL OF: ARTHUR P. ZIEGLER JR., MARK S. BIBRO, JACK R. NORRIS, PITTSBURGH HISTORY AND LANDMARKS FOUNDATION AND LANDMARKS FINANCIAL CORPORATION | : : : : : : : | |
| PITTSBURGH HISTORY AND LANDMARKS FOUNDATION, A PENNSYLVANIA NON-PROFIT CORPORATION; LANDMARKS FINANCIAL CORPORATION, A PENNSYLVANIA NON-PROFIT CORPORATION; HENRY P. HOFFSTOT, JR.; DAVID E. BARENSFELD; PETER H. | : : : : : : : : | No. 54 WAP 2017<br><br>Appeal from the Order of the Commonwealth Court entered April 21, 2017 at No. 113 CD 2016, vacating the Order of the Court of Common Pleas of Allegheny County, Civil Division, entered September 21, |

| | | |
|---|---|---|
| STEPHAICH; PATRICK R. WALLACE; ALEXANDER SPEYER; AND HENRY P. HOFFSTOT, III | : | 2015 at No. GD 13-23355, and remanding. |
| | : | |
| | : | ARGUED:  April 11, 2018 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARTHUR P. ZIEGLER, JR.; MARK S. BIBRO; JACK R. NORRIS; PITTSBURGH HISTORY AND LANDMARKS FOUNDATION, A PENNSYLVANIA NON-PROFIT CORPORATION; AND LANDMARKS FINANCIAL CORPORATION, A PENNSYLVANIA NON-PROFIT CORPORATION | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: HENRY P. HOFFSTOT, JR.; DAVID E. BARENSFELD; PETER H. STEPHAICH; PATRICK R. WALLACE; ALEXANDER SPEYER; AND HENRY P. HOFFSTOT, III | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## CONCURRING AND DISSENTING OPINION

**JUSTICE TODD**                                          **DECIDED:  JANUARY 23, 2019**

I join the thoughtful Concurring and Dissenting Opinion by Justice Mundy in full.[1] In particular, I agree that this case is not the appropriate vehicle to decide whether this Court should adopt the "good cause" exception set forth in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970).  I write to elaborate upon that point.

In contrast to the majority, I do not view the commentary to Section 7.13(e) of the *ALI Principles*[2] as potentially adopting *Garner*, or even, for that matter, implicating *Garner* under the circumstances of this case.  *See* Majority Opinion at 34 ("Comment (e) to

---

[1] I thereby also join part V(D) of the Majority Opinion.

[2] American Law Institute, Principles of Corporate Governance:  Analysis and Recommendations (1994) ("ALI Principles").

Section 7.13, however, does not necessarily adopt the *Garner* good cause analysis."). Rather, as the commentary makes clear, in my view, *Garner* is discussed by way of contrast: there is deemed to be "no conflict" between *Garner* and Section 7.13(e) because *Garner* addresses the attorney-client privilege in the context of discovery directed to the merits of a derivative suit – that is, discovery seeking insight into events giving rise to the litigation. By contrast, Section 7.13 addresses discovery and the limits of the privilege with respect to a motion to dismiss. With regard to *Garner*, the commentary to subsection (e) states:

> The cases have recognized a potential exception to the attorney-client privilege when an action is derivative, on the ground that the plaintiff is seeking to represent the client and the privilege may not be asserted by the attorney against the client. See *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir.1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971); *Valente v. Pepsico*, Inc., 68 F.R.D. 361 (D.Del.1975). This doctrine does not deem the privilege to be unavailable; it simply permits the plaintiff to show "good cause" why the privilege should not be applied against him or her. *Garner* specified nine criteria that the court should balance in making this good cause determination, and virtually all subsequent cases have adopted these factors. Two of these factors are: "whether the communication is of advice concerning the litigation itself" and "whether the communication related to past or prospective actions." 430 F.2d at 1104. ***Those decisions that have found "good cause" to pierce the veil of the attorney-client privilege have involved communications that were roughly contemporaneous with the events giving rise to the litigation. Courts appear uniformly to have refused to subject post-event attorney-client communications to disclosure, particularly those communications advising with respect to a pending litigation.*** See Reporter's Note 3. ***In this light, there is no conflict between the position taken in § 7.13(e) and the*** Garner ***line of cases.*** Section 7.13(e) provides that the special counsel's communications with the board or committee with respect to a pending litigation shall be privileged and not subject to plaintiff's inspection, except as provided in § 7.13(a), which only requires disclosure to the plaintiff of the report or other written

submission to the court and any supporting documentation. The position of counsel to a board or a litigation committee considering a demand or a derivative action is substantially different from that of a general counsel or other corporate attorney who is giving advice with respect to a prospective transaction. The special counsel has undertaken to serve only a narrowly defined client—the disinterested members of the board, or a litigation committee—and counsel's communications uniquely relate to the appraisal of the pending litigation. Moreover, the functioning of the disinterested members of the board or the litigation committee might be severely hampered if communication between them and their counsel could not be conducted with reasonable candor and confidence on both sides.

*ALI Principles* § 7.13(e) cmt. e (emphasis added).

Notably, *Garner* did not involve a motion to dismiss, nor any threshold inquiry into the soundness of the derivative litigation. Indeed, the corporate entity in that case filed its own suit cross-claiming against the non-corporate defendants, asserting, on its own behalf, the claims of the derivative plaintiffs, and the sought-after privileged material concerned the merits of the derivative action.[3]

Here, there is a pending motion to dismiss, and the trial court has yet to rule on whether, under the business judgment rule developed in *Cuker v. Mikalauskas*, 692 A.2d 1042 (Pa. 1997), the suit may proceed. I agree with Justice Mundy that discovery into the merits of the derivative litigation should be precluded at this stage, and, thus, that *Garner*, as yet, plays no role. In my view, within the context of a motion to dismiss filed pursuant to Section 7.13, including any discovery related thereto under subsection (c), the scope of the attorney-client privilege, and the derivative plaintiff's entitlement to otherwise privileged materials, is fully answered by that section.

---

[3] Similarly, the other Pennsylvania case addressing *Garner* discussed by the majority, *Agster v. Barmada*, 43 Pa. D. & C. 4th 353 (Allegheny Cty. 1999), was not a derivative suit. Although brought by a shareholder, the claims therein involved breach of fiduciary duties and breach of contract by the corporation and its majority shareholder.