# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pittsburgh History and Landmarks : 
Foundation, a Pennsylvania Non-Profit : 
Corporation; Landmarks Financial : 
Corporation, a Pennsylvania Non-Profit : 
Corporation; Henry P. Hoffstot, Jr.; : 
David E. Barensfeld; Peter H. Stephaich;: 
Patrick R. Wallace; Alexander Speyer; : 
and Henry P. Hoffstot, III : 
 : 
 : No. 113 C.D. 2016
Arthur P. Ziegler, Jr.; Mark S. Bibro; : Argued: November 16, 2016
and Jack R. Norris : 
 : 
 : 
Pittsburgh History and Landmarks : 
Foundation, a Pennsylvania Non-Profit : 
Corporation; Landmarks Financial : 
Corporation, a Pennsylvania Non-Profit : 
Corporation : 
 : 
 : 
Appeal of: Arthur P. Ziegler Jr., Mark S.: 
Bibro, Jack R. Norris, Pittsburgh History: 
and Landmarks and Foundation : 
Landmarks Financial Corporation : 

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
        HONORABLE RENÉE COHN JUBELIRER, Judge
        HONORABLE ROBERT SIMPSON, Judge
        HONORABLE P. KEVIN BROBSON, Judge
        HONORABLE PATRICIA A. McCULLOUGH, Judge
        HONORABLE MICHAEL H. WOJCIK, Judge
        HONORABLE JOSEPH M. COSGROVE, Judge

**OPINION**
**BY JUDGE SIMPSON**              **FILED: April 21, 2017**

## I. Introduction

This appeal of a discovery order is treated as an appealable collateral order to the extent it may require disclosure of legal opinions and advice otherwise privileged under the attorney-client privilege and the attorney work product

doctrine. Commonwealth v. Blystone, 119 A.3d 306 (Pa. 2015); Red Vision Sys., Inc. v. Nat'l Real Estate Info. Servs., L.P., 108 A.3d 54 (Pa. Super. 2015) (court treated order compelling discovery as to issues relating to attorney-client privilege as collateral, but refused to treat order as to other issues as collateral).

The underlying suit is a derivative action involving two related nonprofit corporations.[1] The suit pits a group of potentially former members of the Boards of Trustees (whose removal is contested) against a group of current officers and members of the Boards of Trustees, amid allegations of corporate mismanagement and breach of fiduciary duty. The nonprofit corporations are named as plaintiffs and defendants. In order to evaluate whether proceeding further was in the best interests of the nonprofit corporations, they formed what they called a joint Independent Investigating Committee (Investigating Committee). After an investigation, the Investigating Committee recommended that the derivative action not continue. Accordingly, the defendants filed a motion to dismiss, which is currently pending before the Court of Common Pleas of Allegheny County (trial court).[2]

Following the guidelines set forth in Sections 7.02 to 7.10, and 7.13 of the American Law Institute Principles of Corporate Governance: Analysis and Recommendations (1994) (ALI Principles), specifically adopted by our Supreme

---

[1] Our appellate jurisdiction is premised on the involvement of the nonprofit corporations. 42 Pa. C.S. §762(a)(5)(ii). The nonprofit corporations are Pittsburgh History and Landmarks Foundation and Landmarks Financial Corporation.

[2] A Motion for Leave to File the Report of the Investigating Committee Under Seal was filed at the same time. Reproduced Record (R.R.) at 411a-16a.

2

Court in <u>Cuker v. Mikalauskas</u>, 692 A.2d 1042 (Pa. 1997),[3] to be applied in derivative actions, the trial court entered the discovery order in question.

For the reasons discussed more fully below, we vacate the discovery order and remand the matter to the trial court for further proceedings.

## II. Background
## A. Derivative Action

Because we will not address the merits of the underlying lawsuit, we mention the details of the action in summary fashion. Plaintiffs/Appellees[4] were members of the Boards of Trustees of the Pittsburgh History and Landmarks Foundation, and the related Landmarks Financial Corporation, their current status being contested. Defendants/Appellants[5] are the long-time President and Chairpersons of the Boards of Trustees of the same nonprofit corporations. Questions arose regarding appropriate management and efforts to reconstitute the Boards of the nonprofit corporations between 2009 and early 2013. In October 2013, Plaintiffs/Appellees formally demanded that the nonprofit corporations secure enforcement of their claims on behalf of the nonprofit corporations.

---

[3] <u>See</u> <u>also</u> <u>Lemenestrel v. Warden</u>, 964 A.2d 902 (Pa. Super. 2008).

[4] The individual Plaintiffs/Appellees were David E. Hoffstot, Jr., Peter H. Stephaich, Patrick R. Wallace, Alexander Speyer, and Henry P. Hoffstot, III. They brought suit in the name of Pittsburgh History and Landmarks Foundation and Landmarks Financial Corporation.

[5] In addition to the nonprofit corporations named as Nominal Defendants, individual Defendants/Appellants are Arthur P. Ziegler, Jr., Mark S. Bibro, and Jack R. Norris.

In response, each Board of Trustees adopted a resolution to appoint a joint Investigating Committee, comprised of sitting members of the Boards of Trustees, advised by independent counsel, with the charge of investigating the allegations made in Plaintiffs'/Appellees' demand.

During this process, in December 2013, Plaintiffs/Appellees brought suit in the name of the nonprofit corporations. Discovery ensued.

Meanwhile, the Investigating Committee completed its investigation and recommended against the prosecution of the derivative action. The Boards of each nonprofit corporation considered the Report of the Investigating Committee and adopted its recommendations. Accordingly, Defendants/Appellants filed the motion to dismiss based on the Report of the Investigating Committee. Reproduced Record (R.R.) at 376a-410a. The motion to dismiss is pending before the trial court.

## B. Discovery Order

During the discovery phase of the lawsuit, disputes arose. In particular, Plaintiffs/Appellees sought disclosure of all information provided to the Investigating Committee as part of its investigation, including material which may be privileged. Defendants/Appellants resisted such disclosure. Plaintiffs/Appellees filed a motion to compel, which, together with the pending motion to dismiss, prompted the trial court order under review.

In response to the motion to compel, the trial court entered the discovery order, which provided in pertinent part as follows:

4

a. Defendants[/Appellants] will provide Plaintiffs[/Appellees] <u>with all materials provided to or generated by the [Investigating Committee], including all related legal opinions and communications.</u> Privilege in such opinions and communications is retained by Nominal Defendants as to all persons and entities not a party to this action.

b. Decision on further release of purportedly privileged material is reserved, as such production is disproportionate to the nature and scope of this litigation at this time. *See* Pa. R.C.P. [No.] 4009.1 (Explanatory Comment) (2012). After production and analysis of materials provided to the [Investigating Committee], further action on these materials may be requested by motion, upon showing that such production would be proportional to the issues at stake at that time.

c. <u>Plaintiffs[/Appellees] may discuss with Anne Nelson the legal advice that she provided to the [Investigating Committee] and communications with the [Investigating Committee]</u>, as well as any non-privileged subjects.

Tr. Ct. Order, 9/21/15; R.R. at 683a-84a (emphasis added).

Defendants/Appellants appealed the discovery order to the extent it may require disclosure of legal opinions and advice otherwise protected by the attorney-client privilege or work product doctrine.

### C. Trial Court Opinion

In response to Defendants'/Appellants' concise statement of the errors complained of on appeal, the trial court filed an opinion. Initially, the trial court clarified "that the attorney-client and work product privileges do not apply to pre-

existing materials provided to the [Investigating Committee] for the purpose of producing the [Investigating Committee Report] or, obviously, to the report itself." Tr. Ct., Slip Op., 2/8/16, at 9; R.R. at 730a. The trial court indicated that the privileges are applicable to communications between the Investigating Committee and its own counsel. Id.

Next, and most relevant to our analysis, the trial court addressed the application of the ALI Principles and the Supreme Court's Cuker decision. In relevant part, the trial court stated the following:

> ALI Principle of Corporate Governance § 7.13(e), which the Supreme Court of Pennsylvania adopted in [Cuker, 692 A.2d at 1049], states in relevant part, 'Plaintiff's counsel should be furnished a copy of related opinions received by the board or committee if any opinion is tendered to the court under § 7.13(a).'
>
> Comment e to § 7.13 explains the logic behind this rule:
>
>> 'The established law of the attorney-client privilege has long provided that invocation of the reliance-on-counsel defense waives the privilege… Thus, it would be unfair if the board or committee could rely on legal advice from its counsel that the actions was [sic] not meritorious as a ground for dismissing the action and then deny plaintiff access to the substance of that advice.'
>
> * * * *
>
> The applicable case law also illustrates the long-held principle that derivative litigation should not be dismissed based on privileged documents. In Cuker, the Supreme Court held that the factors that courts should

6

take into account when determining the sufficiency of a special litigation committee's investigation in a derivative suit include: 'whether the board or its special litigation committee was disinterested, whether it was assisted by counsel, whether it prepared a written report, whether it was independent, whether it conducted an investigation, and whether it rationally believed its decision was in the best interests of the corporation.' Cuker, 692 A.2d at 1048. See also Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982) ('We simply do not understand the argument that derivative actions may be routinely dismissed on the basis of secret documents').

It follows from these cases that in order to determine the independence and investigative adequacy of a special litigation committee such as the [Investigating Committee], [Plaintiffs'/Appellees'] counsel must be allowed to access documents to which the committee itself had access.

Here, denying Plaintiffs'[/Appellees'] counsel access to pre-existing materials provided to the [Investigating Committee] for the purpose of producing the [Investigating Committee] report or to the report itself would create the exact problem that the Cuker and Joy courts sought to avoid: potentially dismissing a derivative action on the basis of secret documents.

Defendants[/Appellants] argue that § 7.13(e) only requires that Plaintiffs[/Appellees] receive the [Investigating Committee] materials submitted to the Court as well as related formal legal opinions given to the [Investigating Committee]. *Defendants' Brief in Opposition to Plaintiffs' Motion to Compel* at 14. Defendants[/Appellants] also assert that 'the [Investigating Committee] process does not create an across-the-board waiver of the attorney-client or work product doctrines.' Id. at 16.

Defendants[/Appellants] are correct that § 7.13(e) does not create an across-the-board waiver of privilege. See *Comment (e)* ('This understandable concern [that derivative actions may be dismissed on the basis of secret

7

documents] does not, however, justify a complete waiver of the privilege.').

But we find that Plaintiffs[/Appellees] have the stronger argument because there is no attorney-client or work product privilege recognized in § 7.13(e) regarding documents that existed before the creation of the [Investigating Committee] and were not generated by counsel to the [Investigating Committee]. Furthermore, attorney-client privilege, as discussed in § 7.13(e) relates to communications with the [Investigating Committee's] counsel, not with Defendants'[/Appellants'] counsel. See *Comment (e)* ('Section 7.13(e) provides that the special counsel's communications with the board or committee with respect to a pending litigation shall be privileged and not subject to plaintiff's inspection, except as provided in § 7.13(a), which only requires disclosure to the plaintiff of the report or other written submission to the court and any supporting documentation.').

Thus, Plaintiffs[/Appellees] are correct that pre-existing documents submitted to the [Investigating Committee] must be produced once the [Investigating Committee] report was submitted to the court.

Additionally, <u>Defendants[/Appellants] would be unable to challenge the adequacy of the [Investigating Committee's] investigation if they were denied access to the materials reviewed during the investigation.</u>

Tr. Ct., Slip Op., at 9-12; R.R. at 730a-33a (emphasis added).

The trial court also discussed the fiduciary duty exception and the common interest exception to the attorney-client privilege and work product protection. The trial court concluded that these exceptions rendered the privileges inapplicable under these circumstances of this case.

8

Finally, the trial court authorized Plaintiffs/Appellees to speak with Anne Nelson, the former General Counsel of one of the nonprofit corporations, about her potential testimony, over the objections of Defendants/Appellants. The trial court reasoned that before she stopped working in 2012, the individual Plaintiffs/Appellees were sitting members of the Boards of Trustees; therefore, at the time they shared a common interest with Ms. Nelson. In those circumstances the common interest exception negated the privileges, and Ms. Nelson could discuss her legal advice to and communications with the Investigating Committee.

### III. Issues

Defendants/Appellants state several issues for our consideration, which we reorganize for discussion purposes. First, they question whether the attorney-client or work product privileges may be asserted as to communications during the time period when the individual Plaintiffs/Appellees were still members of the Boards of the nonprofit corporations. Second, they question whether the privileges may be asserted as to communications between Defendants/Appellants and counsel for the Investigating Committee. Third, they question whether the common interest exception and the fiduciary duty exception apply to this case. Fourth, they question whether the privileges may be asserted in derivative litigation brought by former Board members. Fifth, they question whether Plaintiffs/Appellees have a right to interview Anne Nelson regarding her communications with the Investigating Committee.

## IV. General Arguments
### A. Defendants/Appellants

In addition to brief argument about the scope of an appeal from a collateral order, Defendants/Appellants emphasize the importance of the attorney-client privilege and work product protection to assure that attorneys and their clients can freely communicate. They assert the trial court's order has the effect of stripping the privilege from such communications based solely upon the status of the Plaintiffs/Appellees as derivative plaintiffs.

Defendants/Appellants assert the trial court's discovery order failed to comply with long-established legal principles governing application of the attorney-client privilege. In particular, the privilege is a broad one. Also, it is held by the client, in this case the nonprofit corporations, not by its board members or other constituents. The status of Plaintiffs/Appellees as former board members does not give them standing to assert the common client and fiduciary exceptions to the privilege.

Further, Defendants/Appellants assail the trial court's application of the common interest/common client exceptions to the attorney-client privilege. They highlight that the elements of those exceptions are not met. In some respects, they assert, the trial court's application would effectively eliminate the attorney-client privilege in derivative actions and would dramatically change the role of counsel to any corporation in Pennsylvania.

Defendants/Appellants also challenge the trial court's application of the fiduciary exception to the attorney-client privilege. They underscore that the

10

exception should be a narrow one, the trial court applied the exception in a novel way, no trust is involved, and the Plaintiffs/Appellees are not beneficiaries of a trust.

Finally, Defendants/Appellants complain that the effect of the trial court's discovery order is to strip the privilege from any materials provided to or generated by the Investigating Committee. They argue that the ALI Principles cited by the trial court were misinterpreted by it. They claim that the ALI Principles are nothing more than an express recognition of the "reliance on counsel" exception to the attorney-client privilege, and the Principles merely clarify the common sense rule that the plaintiffs in a derivative lawsuit are entitled to receive copies of materials submitted to the court and copies "of legal opinions related to any opinion **if** such an opinion is provided to the court." Appellants' Br. at 52 (emphasis in original). Additionally, they assert that the ALI Principles and the Cuker decision adopting them did not intend to change Pennsylvania law with regard to attorney-client privilege. Defendants/Appellants emphasize the context of the ALI Principles and the Cuker decision is to afford a limited process by which the business judgment rule is applied to circumscribe a court's review.

### B. Plaintiffs/Appellees

After some argument related to the merits of the underlying action, Plaintiffs/Appellees contend that because the members of the Investigating Committee had an interest in perpetuating their continued service on the Boards of the nonprofit corporations, their recommendations should be challenged by a review of all the materials "that were supposedly considered by that [C]ommittee." Appellees' Br. at 15.

11

Further, Plaintiffs/Appellees contend the fiduciary exception and joint interest/common interest exceptions to the privileges apply here.

In addition, they claim "good cause" warrants production of the ordered information, and the withholding of the information would frustrate the interests of justice, which is contrary to Pennsylvania law. Citing the ALI Principles, Plaintiffs/Appellees assert the privileges are waived as to "certain portions of the communications with the counsel of the [Investigating Committee] when a legal opinion or advice is relied upon and submitted to the court" as is the case here. Id. Further, the ALI Principles recognize that it would be unfair to urge the dismissal of an action on the basis of a special investigation committee report without providing materials considered by the committee to the plaintiff.

## C. Defendants'/Appellants' Reply

In their Reply Brief, Defendants/Appellants expend considerable effort to explain the facts underlying the litigation. They also explain the large amount of material potentially subject to discovery.

In addition, Defendants/Appellants point out fundamental flaws they perceive in Plaintiffs'/Appellees' arguments: there is no legal distinction between the rights of a board member of a for-profit corporation and the rights of a board member of a nonprofit corporation; derivative lawsuit plaintiffs are not transformed into the corporation or its authorized representative simply because they assert a derivative claim; Plaintiffs/Appellees were not the clients of corporate counsel and therefore cannot demand to see communications between corporate counsel and the authorized representatives of the nonprofit corporations; and, the

12

role of Plaintiffs/Appellees as former board members is not the basis for the fiduciary exception to the attorney-client privilege and work product protection.

Finally, Defendants/Appellants assert that the ALI Principles do not require either nonprofit corporation to surrender the protections in derivative litigation. Quoting portions of Section 7.13(e) and the comment to subsection e, they repeat that the ALI Principles do not change the law applicable to the attorney-client privilege, and they were not intended to work a blanket waiver of protected communications. They contend that a blanket waiver of protection is inconsistent with the entire process set forth in the ALI Principles, which provide for limited discovery to determine whether the business judgment rule should be applied. The only discovery of legal opinions which is contemplated by Section 7.13(e) is "the disclosure of any formal opinion … given by counsel to the … committee with regard to the action if any legal opinion is tendered to the court." AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13 cmt. e (1994). Defendants/Appellants complain that the trial court's order for disclosure of everything submitted to the Investigating Committee is too broad.

## V. Discussion
### A. <u>Cuker</u> and ALI Principles, Generally

Although generally discovery orders are reviewed under an abuse of discretion standard, application of the attorney-client privilege and work product doctrine raises questions of law, for which our standard of review is *de novo* and our scope of review is plenary. <u>In re Thirty-Third Statewide Investigating Grand</u>

13

Jury, 86 A.3d 204 (Pa. 2014); Levy v. Senate of Pennsylvania, 65 A.3d 361 (Pa. 2013) (Levy II).

The starting point for our review is our Supreme Court's decision in Cuker, a derivative action. Sensing confusion over application of the business judgment rule in Pennsylvania, and a lack of clear authority about how the rule should be applied in derivative litigation, the Court added clarity. First, the Court explained that the business judgment rule applied in derivative litigation, and "should insulate officers and directors from judicial intervention in the absence of fraud or self-dealing, if challenged decisions were within the scope of the directors' authority, if they exercised reasonable diligence, and if they honestly and rationally believed their decisions were in the best interests of the company." Cuker, 692 A.2d at 1048 (emphasis added).

The Court authorized a trial court to act as a sort of gate-keeper, making a preliminary examination of the circumstances "to determine if the conditions warrant application of the business judgment rule." Id. If circumstances support application of the rule, the trial court would not proceed to an examination of the merits of the challenged decisions. Id. "In order to make the business judgment rule meaningful, the preliminary examination should be limited and precise so as to minimize judicial involvement when application of the business judgment rule is warranted." Id. Our Supreme Court further explained the limited, precise preliminary examination it anticipated:

> To achieve these goals, a court might stay the derivative action while it determines the propriety of the board's decision. The court might order limited

14

> discovery or an evidentiary hearing to resolve issues respecting the board's decision. <u>Factors bearing on the board's decision will include whether the board or its special litigation committee was disinterested, whether it was assisted by counsel, whether it prepared a written report, whether it was independent, whether it conducted an adequate investigation, and whether it rationally believed its decision was in the best interests of the corporation (i.e., acted in good faith).</u> If all of these criteria are satisfied, the business judgment rule applies and the court should dismiss the action.

<u>Id.</u> (emphasis added).

This is the procedural posture of the current derivative litigation. Pending before the trial court is Defendants'/Appellants' motion to dismiss based on the recommendation of the Investigating Committee. The trial court is preparing to perform its preliminary examination of the judgment of the Investigating Committee. As part of the preparation for the preliminary examination, the trial court entered the discovery order in question.

In <u>Cuker</u>, the Supreme Court went further to "provide a comprehensive mechanism to address shareholder derivative actions." <u>Id.</u> at 1048-49. Particularly relevant here, the Supreme Court specifically adopted several sections of the ALI Principles, including Section 7.13, titled "Judicial Procedures on Motion to Dismiss a Derivative Action Under §7.08 or §7.11." That Section provides in pertinent part as follows:

> (a) *Filing of Report or Other Written Submission.* Upon a motion to dismiss an action under § 7.08 (Dismissal of a Derivative Action Against Directors, Senior Executives, Controlling Persons, or Associates Based on a Motion Requesting Dismissal by the Board or a

Committee) or § 7.11 (Dismissal of a Derivative Action Based Upon Action by the Shareholders), the corporation shall file with the court a report or other written submission setting forth the procedures and determinations of the board or committee, or the resolution of the shareholders. A copy of the report or other written submission, including any supporting documentation filed by the corporation, shall be given to the plaintiff's counsel.

(b) *Protective Order.* The court may issue a protective order concerning such materials, where appropriate.

(c) *Discovery.* Subject to § 7.06 (Authority of Court to Stay a Derivative Action), if the plaintiff has demonstrated that a substantial issue exists whether the applicable standards of § 7.08, § 7.09, § 7.10, § 7.11, or § 7.12 have been satisfied and if the plaintiff is unable without undue hardships to obtain the information by other means, the court may order such limited discovery or limited evidentiary hearing, as to issues specified by the court, as the court finds to be (i) necessary to enable it to render a decision on the motion under the applicable standards of § 7.08, § 7.09, § 7.10, § 7.11, or § 7.12, and (ii) consistent with an expedited resolution of the motion. In the absence of special circumstances, the court should limit on a similar basis any discovery that is sought by the plaintiff in response to a motion for summary judgment by the corporation or any defendant to those facts likely to be in dispute. The results of any such discovery may be made subject to a protective order on the same basis as under § 7.13(b).

\* \* \* \*

(e) *Privilege.* <u>The plaintiff's counsel should be furnished a copy of related legal opinions received by the board or committee if any opinion is tendered to the court under § 7.13(a). Subject to that requirement, communications, both oral and written, between the board or committee and its counsel with respect to the subject matter of the action do not forfeit their privileged</u>

16

> character, and documents, memoranda, or other material qualifying as attorney's work product do not become subject to discovery, on the grounds that the action is derivative or that the privilege was waived by the production to the plaintiff or the filing with the court of a report, other written submission, or supporting documents pursuant to § 7.13.

AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13 (a)-(c), (e) (1994) (emphasis added).

In adopting the ALI Principles, the Court weighed many considerations. Among other things, the Court noted the need for specific guidance on how derivation actions should be managed. Cuker, 692 A.2d at 1049. The Court declared that it often found ALI guidance helpful in the past, and the scholarship reflected in the work of the American Law Institute has been consistently reliable and useful, "most frequently when adopting or citing sections of various Restatements." Id. Also, having undertaken a broad examination of the law in Pennsylvania and numerous other jurisdictions, the Court declared that "the principles set forth by the ALI are generally consistent with Pennsylvania precedent." Id. (emphasis added). We will revisit these observations below.

## B. ALI Principles: Attorney-Client Privilege and Work Product

Much like Restatements of the Law, the ALI Principles are reinforced with additional scholarship in the form of Comments and Reporter's Notes. Comment e to Section 7.13 is titled "Disclosure and the attorney-client privilege." Initially, comment e describes a potential exception to the attorney-client privilege when an action is derivative, founded primarily upon the leading decision in Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970), cert. denied, 401 U.S. 974

17

(1971).  This potential exception is based on the ground that the plaintiff in a derivative action is seeking to represent the client corporation, and the privilege may not be asserted by the attorney against the client.  AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13 cmt. e (1994).  As to this potential exception to the attorney-client privilege, Comment e provides in pertinent part:

> The cases have recognized a potential exception to the attorney-client privilege when an action is derivative, on the ground that the plaintiff is seeking to represent the client and the privilege may not be asserted by the attorney against the client.  See [*Garner*]; *Valente v. Pepsico, Inc., 68 F.R.D. 361 (D.Del. 1975).*  This doctrine does not deem the privilege to be unavailable; it simply permits the plaintiff to show 'good cause' why the privilege should not be applied against him or her. *Garner* specified nine criteria that the court should balance in making this good cause determination, and virtually all subsequent cases have adopted these factors. Two of these factors are:  'whether the communication is of advice concerning the litigation itself' and 'whether the communication related to past or prospective actions.' *430 F.2d at 1104.*  Those decisions that have found 'good cause' to pierce the veil of the attorney-client privilege have involved communications that were roughly contemporaneous with the events giving rise to the litigation.  Courts appear uniformly to have refused to subject post-event attorney-client communications to disclosure, particularly those communications advising with respect to a pending litigation.  See Reporter's Note 3.  In this light, there is no conflict between the position taken in § 7.13(e) and the *Garner* line of cases.  Section 7.13(e) provides that the special counsel's communications with the board or committee with respect to a pending litigation shall be privileged and not subject to plaintiff's inspection except as provided in §7.13(a), which only requires disclosure to the plaintiff of the report or other written submission to the court and any supporting documentation.

18

Id. (emphasis added).

In Garner, the Fifth Circuit determined that the attorney-client privilege must be placed in perspective. 430 F.2d at 1100. Citing Professor Wigmore's treatise on Evidence, the Court stated the fundamental principle that the public has the right to every man's evidence, and exceptions from the general duty to give testimony that one is capable of giving are distinctly exceptional. Id. An exception is justified if--and only if--policy requires it be recognized when measured against the fundamental responsibility of every person to give testimony. Id.

The Garner Court went on to explain conceptual problems inherent in shareholder derivative actions. In commenting on two English cases that treated the relationship between the shareholder and company as analogous to that between beneficiaries and trustees, the Court stated, "these English cases are persuasive recognition that there are obligations, however characterized, that run from corporation to shareholder and must be given recognition in determining the applicability of the privilege." Id. at 1102. The Court also found instructive the common interest exception to the privilege. Id.

The Garner Court concluded that a corporation is not barred from asserting the privilege, "[b]ut where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show

cause why it should not be invoked in the particular instance." Id. at 1103-04. Finally, the Court set forth indicia of good cause that could be considered. Id. at 1104.

Returning to the ALI Principles, Comment e to Section 7.13 contemplates a potential exception to the attorney-client privilege. Consistent with the Garner line of cases, a trial court may evaluate certain criteria to determine whether "good cause" exists to not apply the attorney-client privilege to a plaintiff in a derivative action. Even if "good cause" exists, however, disclosure is usually limited to communications that were roughly contemporaneous with the events giving rise to the litigation. Id. Post-event attorney-client communications, particularly those communications advising with respect to pending litigation, are not disclosed under this potential exception. Id.

In Comment e to Section 7.13, the potential Garner exception to the privilege is treated separately from the consequences of the submission of a special litigation committee report in support of a motion to dismiss. Comment e also contains a lengthy discussion of limited waiver of the attorney-client privilege based on the submission of a special litigation committee's report to the court, as discussed in Section 7.13(e) of the ALI Principles quoted above.

The trial court here did not specifically discuss the potential exception to the privilege based on Garner; rather, only the limited waiver exception of Section 7.13(e) was expressly discussed by the trial court.

20

Relatedly, Reporter's Note 3 to Section 7.13 is devoted to the status of the attorney-client privilege and work product in derivative litigation. This Note initially acknowledges that the status of the attorney-client privilege and work product protection in derivative litigation continues to be disputed. Nevertheless, the Note extensively discusses the Garner line of cases. The Note also restates a non-exclusive list of the considerations for a trial court before applying the Garner potential exception to the privilege in a derivative action. Further, the Note states: "*Garner's* good faith exception to the privilege in a derivative action 'has become accepted doctrine.'" Id. (citations omitted).

## C. Restatement (Third) of the Law Governing Lawyers

In the past, this Court and our Supreme Court consulted the Restatement (Third) of the Law Governing Lawyers (2000) when dealing with the contours of the attorney-client privilege. See Gillard v. AIG Ins. Co., 15 A.3d 44 (Pa. 2011); Levy v. Senate, 34 A.3d 243 (Pa. Cmwlth. 2011) (Levy I), aff'd in part, rev'd in part by Levy II (affirming application of attorney-client privilege, reversing *per se* waiver of alternate reasons for redaction).

Section 85 of the Restatement (Third), titled "Communications Involving a Fiduciary Within an Organization," essentially adopts the Garner potential exception to the attorney-client privilege in suits where there is a fiduciary relationship. Section 85 provides:

> In a proceeding involving a dispute between an organizational client and shareholders, members, or other constituents of the organization toward whom the directors, officers, or similar persons managing the organization bear fiduciary responsibilities, the attorney-

21

client privilege of the organization may be withheld from a communication otherwise within § 68 if the tribunal finds that:

> (a) those managing the organization are charged with breach of their obligations toward the shareholders, members, or other constituents or toward the organization itself;
>
> (b) the communication occurred prior to the assertion of the charges and relates directly to those charges; and
>
> (c) the need of the requesting party to discover or introduce the communication is sufficiently compelling and the threat to confidentiality sufficiently confined to justify setting the privilege aside.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §85 (2000) (emphasis added).

It is noteworthy that the withholding of the attorney-client privilege in these circumstances is limited to communications which occurred prior to the assertion of the charges and which related directly to those charges. See RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §85(b) (2000). This is the same limitation described in ALI Principles, Section 7.13, comment e: "Those decisions which have found 'good cause' to pierce the veil of the attorney-client privilege have involved communications that were roughly contemporaneous with the events giving rise to the litigation."[6] AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13 cmt. e (1994).

---

[6] In this case, the Complaint identifies actions in the 2009 to early 2013 time period. See R.R. at 1a-37a. Plaintiffs'/Appellees' demand was made in October 2013.

Comment b to Section 85 of the Restatement, titled "Rationale," makes clear that Section 85 adopts the Garner line of cases: "Proceeding by analogy from the trustee exception of §84, the leading decision of [Garner] held that a court could, in appropriate circumstances, refuse to enforce a corporation's otherwise valid attorney-client privilege when shareholders attempt to discover a communication between the corporation's officers and its lawyers." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §85 cmt. b (2000). Two policy considerations support this position. Directors and managers of an organization acting in that capacity in principle should not keep corporate information secret from their own principal constituents, the members of the organization. Id. Second, in litigation against their constituents, the question of waiver of the attorney-client privilege may not be decided objectively. Id.

The Reporter's Note to Comment b ("Rationale"), states in part, "Essential to the doctrine is the existence of a fiduciary relationship between the party seeking to set aside the attorney-client privilege and the managers of the organization that asserts the privilege." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §85 Reporter's Note, cmt. b (2000) (citation omitted). Here, Defendants/Appellants do not assert that a fiduciary relationship is lacking. To the contrary, they apparently concede the existence of a fiduciary relationship. Appellants' Reply Br. at 25 ("[T]he conclusion that the fiduciary exception does not apply does not mean that Appellees or the individual Defendants were not fiduciaries.").

23

## D. <u>Cuker</u> and ALI Principles, Summary
## 1. <u>Garner</u>-Based Potential Exception to Privilege

Based on our review, we conclude that both Section 7.13 of the ALI Principles and Section 85 of the Restatement (Third) of the Law Governing Lawyers adopt the reasoning and procedure of the <u>Garner</u> line of cases. We view these provisions for withholding the attorney-client privilege for a communication that occurred prior to the assertion of charges and relating directly to those charges, based on certain predicate findings, as functionally equivalent. This is *in addition to* the limited waiver of the attorney-client privilege to legal opinions based on the submission to the trial court of an investigating committee's report in support of a motion to dismiss. AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13(e) (1994).

We further hold that this is the law of Pennsylvania through the Supreme Court's express adoption of the comprehensive mechanism for handling shareholder derivative actions embodied in the ALI Principles in general and Section 7.13 in particular. In making this holding, we reject several arguments raised by Defendants/Appellants. Primarily, we reject the argument that adoption of the ALI Principles, particularly Section 7.13, was not intended to expand the law of Pennsylvania, but merely to set forth the common sense principle that plaintiffs should be provided copies of what is submitted to the court. The <u>Cuker</u> Court made clear that the lower courts needed broad, specific guidance from the Supreme Court on how derivative litigation should be managed, and the ALI Principles provided that guidance. Adoption of the ALI Principles was a deliberate effort by the Court to fill perceived gaps. Adoption was based on past experience with ALI work and respect for the scholarship involved, "most frequently in

24

adopting or citing sections of various Restatements .…" Cuker, 692 A.2d at 1049. Our conclusion is reinforced by past experience with and respect for scholarship in the work of the Restatement (Third) of the Law Governing Lawyers, which in Section 85 reached a functionally identical conclusion with regard to the potential exception to the privilege.

Further, the Supreme Court found the ALI Principles "generally consistent" with Pennsylvania precedent. Cuker, 692 A.2d at 1049. In our view, the qualifier "generally" is significant. It communicates that there could be some inconsistency, but it would be tolerated. We further observe that there are no decisions of the Pennsylvania Supreme Court or other Pennsylvania appellate courts which decline to adopt a potential Garner-based exception to the attorney-client privilege. The Defendants/Appellants cite to Pennsylvania cases establishing general, uncontested propositions about the importance and breadth of the attorney-client privilege; however, they do not establish a clear inconsistency between Pennsylvania law and a Garner-based exception to the privilege, as recognized in both the ALI Principles and the Restatement (Third) of the Law Governing Lawyers for the discrete area of derivative litigation.

Moreover, the Garner Court's approach to competing interests, those of the corporation in seeking legal advice, those of stockholders of the corporations to whom some "good management" duty is owed, and the public's right to every man's evidence, is generally consistent with our Supreme Court's efforts to define the scope of the privilege. In its 2011 Gillard decision dealing with the privilege, the Court noted the "ongoing tension between the two strong, competing interests-

25

of-justice factors in play—namely—the encouragement of trust and candid conversations between lawyers and their clients, … and the accessibility of material evidence to further the truth-determining process." Gillard, 15 A.3d at 57.

We acknowledge that in two non-binding decisions trial courts located in Pennsylvania declined to adopt the reasoning in Garner. See R.J. Lefkowitz v. Duquesne Light Co., CIV. A. Nos. 86-1046, 86-2085, 1988 WL 169273 (W.D. Pa. June 14, 1988) (memorandum opinion) (disposing of discovery motion); Agster v. Barmada, 43 Pa. D.& C.4th 353 (C.P. Allegheny 1999), 1999 WL 1577979 (disposing of discovery motion in suit involving closely-held corporation). Neither case, however, referenced our Supreme Court's opinion in Cuker, the ALI Principles, or the Restatement (Third) of the Law Governing Lawyers. Indeed, the Lefkowitz decision pre-dated Cuker, the ALI Principles, and the Restatement (Third). The Agster decision post-dated Cuker and the ALI Principles, but did not mention them. Nevertheless, the trial court in Agster conceded that a majority of courts that considered the issue have followed Garner. Agster, 43 Pa. D. & C.4th at 362. Also, the decision in Agster pre-dated Section 85 of the Restatement (Third) of the Law Governing Lawyers. Under all these circumstances, we discern little persuasive value in those trial court cases for current purposes.

Moreover, we specifically reject Defendants'/Appellants' arguments that an exception to the privilege does not apply because Plaintiffs/Appellees are no longer members of the Boards of the nonprofit corporations. If Plaintiffs/Appellees are no longer members of the Boards (an as-yet undecided fact that goes to the underlying merits) it was not because of any voluntary action on

26

their part. Further, as discussed below, some of the legal advice they wish to discover was allegedly given while they were unquestionably members of the Boards. See In re Int'l Sys. & Controls Corp. Sec. Litig., 693 F.2d 1235, 1239 n.3 (5th Cir. 1982) (allowing former shareholders to seek application of potential Garner exception).

## 2. Process

We understand the judicial process to be as follows. Tasked with undertaking a preliminary examination to determine application of the business judgment rule, a trial court may order limited discovery. The discovery should be tailored to the preliminary inquiry faced by the trial court, as explained in Cuker. The trial court did so here. See Tr. Ct., Slip Op., at 11; R.R. at 732a (trial court defining its preliminary task as determining the independence and investigative adequacy of the special litigation committee). In addition, the trial court should make the discovery determinations set forth in Section 7.13(c) of the ALI Principles, quoted above.[7]

---

[7] These include demonstrations that a substantial issue exists whether the applicable standards have been satisfied and that the plaintiff is unable without undue hardship to obtain information by other means, and trial court findings that discovery is necessary to enable it to render a decision on the motion to dismiss under the applicable standards and that discovery is consistent with an expedited resolution of the motion to dismiss. AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13(c) (1994).

It is unclear the extent to which the trial court made all these determinations when it entered its discovery order. Nevertheless, our review under the collateral order appealed here is limited to issues involving application of the attorney-client privilege and work product protection only. Red Vision Sys., Inc. v. Nat'l Real Estate Info. Servs. L.P., 108 A.3d 54 (Pa. Super. 2015).

Next, when faced with a question involving assertion of the attorney-client privilege and work product protection, a trial court should undertake a Garner "good cause" inquiry, which would include consideration of the non-exclusive factors discussed in Garner and cases following it. As discussed in Comment e to Section 7.13 of the ALI Principles, this inquiry will largely focus on communications that were roughly contemporaneous with the events giving rise to the litigation. AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13(e) cmt. e (1994). The trial court here did not undertake this inquiry. Therefore, we are constrained to vacate the trial court's discovery order and remand to the trial court for it to do so.

Plaintiffs/Appellees explain the type of information that might be within the ambit of a potential Garner-based withholding of the attorney-client privilege: legal advice about efforts to pack the nonprofit corporation boards; legal advice about whether investments questioned by members of a Board were proper; and, legal advice about whether a Board could vote out all existing Trustees and elect successors based on a state statute, where a Board by-law only provided for termination of directors for cause. Appellees' Br. at 56. Such legal advice rendered at about the time of those alleged events and before the current suit was pending could be reached by a discovery order, consistent with both Section 7.13 of the ALI Principles and Section 85 of the Restatement (Third) of the Law Governing Lawyers, after consideration of pertinent factors.

### 3. Limitations

We caution that the breadth of legal advice and opinions potentially discoverable under a <u>Garner</u> approach may be more confined than that envisioned by the trial court. In particular, post-event attorney-client communications, particularly those communications advising with respect to pending litigation, are probably not discoverable. AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13, cmt. e (1994). Here, most of the actions described in the Complaint occurred between 2009 and early 2013. R.R. at 1a-37a. Plaintiffs'/Appellees' demand was made in October 2013, and suit was filed in December 2013.

We also caution that the breadth of legal opinions discoverable as a result of the submission to the trial court of the Investigating Committee's Report may be more restricted than that envisioned by the trial court. Communications to the Investigating Committee from its counsel may not be disclosed, unless the Committee's Report is submitted to the trial court to support the motion to dismiss. AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13(e) (1994). In such a circumstance, the Report and supporting documentation, including counsel's written or oral opinion and "related legal opinions" must be disclosed to Plaintiffs/Appellees. <u>Id.</u>

The phrase "related legal opinions" is further explained in Comment e to Section 7.13. The phrase does *not* mean any legal opinion from any time brought to the attention of a special litigation committee. Instead, the phrase applies to all other formal legal opinions given to a special litigation committee "and pertaining to the same general subject matter" as the committee's counsel's

29

formal opinion. AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13 cmt. e (1994). Thus, the legal opinions disclosed as a result of the submission of the Committee's Report to the trial court to support the motion to dismiss must be "related" to the opinion of the Committee's counsel in the sense that they pertain to the same general subject matter. Presumably, the subject matter of the Committee's counsel's opinion is whether continuing the current litigation is in the best interests of the nonprofit corporations. "This rule is intended to discourage opinion shopping, without chilling the [special litigation committee's] access to confidential legal advice." Id.

Finally, we caution that the work product doctrine protects the work product of the Investigating Committee's counsel, regardless of the attorney-client privilege and any Garner-based exception. AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13 cmt. f (1994). "Thus, counsel's notes, internal drafts, correspondence with witnesses, and similar materials should normally be protected from disclosure under the work product doctrine, regardless of the availability of the attorney-client privilege." Id.

### 4. Anne Nelson, Former General Counsel

As discussed above, upon remand, the trial court will consider whether a Garner-based withholding of the attorney-client privilege is appropriate. If it is, Plaintiffs'/Appellees' discussions with Ms. Nelson would most likely be limited to communications that were roughly contemporaneous with the events giving rise to the litigation. More particularly, under a Garner-based approach discussions would most likely be limited to communications during the approximate period from 2009 to Ms. Nelson's departure as General Counsel in

30

2012.  <u>See</u> AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13 cmt. e (1994); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §85 (2000).

As to communications occurring between Ms. Nelson and the Investigating Committee or its counsel after the Committee's formation in 2013, a period when Ms. Nelson was no longer General Counsel and therefore not obviously involved in providing legal services to either corporation or the Investigating Committee, it is hard to see how any new attorney-client privilege arises.  <u>See</u> <u>Gillard</u> (privilege operates in two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice).  Just like any other witness, Ms. Nelson would be required to keep prior confidences, subject to a potential <u>Garner</u>-based exception.

### E. Fiduciary-Lawyer Communications

The trial court made reference to what it called the fiduciary duty exception to the attorney-client privilege.  The trial court applied this exception despite acknowledging that this case does not involve a trust or beneficiaries.  Instead, the trial court focused on a fiduciary duty.

Section 84 of the Restatement (Third) of the Law Governing Lawyers, titled "Fiduciary-Lawyer Communications," provides:

> In a proceeding in which a trustee of an express trust or similar fiduciary is charged with breach of fiduciary duties by a beneficiary, a communication

31

> otherwise within § 68 is nonetheless not privileged if the communication:
>
> > (a) is relevant to the claimed breach; and
> >
> > (b) was between the trustee and a lawyer (or other privileged person within the meaning of § 70) who was retained to advise the trustee concerning the administration of the trust.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §84 (2000). Comment a to Section 84 ("Scope and cross-references"), provides that this exception is of long standing and was the starting point for recognizing the Garner-based exception discussed in Section 85. Restatement (Third) of the Law Governing Lawyers §84 cmt. a. (2000). Comment b to Section 84 ("Rationale"), states that this exception, unlike the Garner-based exception, does not require the beneficiary to show good cause. Restatement (Third) of the Law Governing Lawyers §84 cmt. b. (2000).

The Garner Court referenced the fiduciary duty exception to the privilege. It struggled, however, to characterize corporate management's duties as being co-extensive with those of a common law trustee. Garner, 430 F.2d at 1101-02. This was particularly true in describing the duty of corporate management to a very minor stockholder. Id. Because we share these concerns, we doubt that a broad fiduciary duty exception sufficiently captures the relationships in this derivative action, and we hold that a nuanced Garner-based exception is more appropriate here.

## F. Common Interest Exception

The trial court also referenced what it called the common interest exception to the privilege, especially with regard to communications involving former General Counsel Anne Nelson. Defendants/Appellants argue that the trial court conflated the common interest exception, involving two or more persons with the same interests represented by different lawyers, with the co-client exception, where two or more persons with common interests are represented by the same lawyer. Appellants' Br. at 29-30. Further, Defendants/Appellants assert that the elements of the exceptions are not established here. Id.

Section 75 of the Restatement (Third) of the Law Governing Lawyers, titled "The Privilege of Co-Clients," provides:

> (1)  <u>If two or more persons are jointly represented by the same lawyer</u> in a matter, a <u>communication</u> of either co-client that otherwise qualifies as privileged under §§ 68-72 and <u>relates to matters of common interest is privileged as against third persons</u>, and any co-client may invoke the privilege, unless it has been waived by the client who made the communication.

> (2)  <u>Unless the co-clients have agreed otherwise, a communication described in Subsection (1) is not privileged as between the co-clients</u> in a subsequent adverse proceeding between them.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §75 (2000) (emphasis added).[8]  Thus, the attorney-client privilege for information shared between co-

---

[8] "The Privilege in Common-Interest Arrangements" (also called the Community-of-Interest Privilege), is set forth in Section 76 of the Restatement (Third) of the Law Governing Lawyers. This form of the attorney-client privilege, and its corresponding exception, is distinguished from the co-client situation in that it involves representation "by separate lawyers." **(Footnote continued on next page…)**

clients arises under subsection (1) in favor of jointly represented persons with a common interest, as against third persons. However, subsection (2), sometimes referred to as the adverse litigation exception to the privilege, provides that the privilege cannot be raised by one co-client against another in subsequent adverse proceedings between them. Id.; see In re Teleglobe Commc'ns Corp., 493 F.3d 345 (3d Cir. 2007). Plaintiffs/Appellees here appear to rely on this exception to the privilege.

Although not discussed in the Comments to Section 75 of the Restatement (Third), this form of the privilege and its corresponding exception do not require that the co-client demonstrate "good cause." Thus, the common interest (or adverse litigation) exception appears to be broader than the Garner-based exception for derivative litigation.

As stated in Teleglobe, a leading case on the privilege and the exception, when former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable. Teleglobe, 493 F.3d at 366 (citing, in part, RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §75(2) (2000)). The rule has two bases: (1) the presumed intent of the parties; and, (2) the lawyer's fiduciary obligation of candor to both

---

**(continued…)**

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §76(1) (2000); see In re Teleglobe Commc'ns Corp., 493 F.3d 345 (3d Cir. 2007). Because "separate lawyers" have not been identified here, this form of the privilege and exception appears inapplicable. See Teleglobe.

parties. Id. (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §75 cmt. d (2000)).

Two problems arise in applying the privilege and the exception under the circumstances here. First, the concept of "common interest" could be problematic under the facts. As discussed in Teleglobe, once begun, a co-client representation generally continues until a client discharges the lawyer or the lawyer withdraws. Id. at 362. In addition, numerous courts recognize that the relationship may terminate by implication. Id. In particular, a joint representation terminates when it becomes clear to all parties that the clients' legal interests have diverged too much to justify using common attorneys. Id.

Addressing what happens when joint representation goes awry, the Teleglobe Court went further. The Court acknowledged the difficult problem when a joint attorney fails to end the joint representation and instead continues representing both clients when their interests become adverse. "In this situation, the black-letter law is that when an attorney (improperly) represents two clients whose interests are adverse, the communications are privileged against each other notwithstanding the lawyer's misconduct." Id. at 368 (citing, in part, Eureka Inv. Corp. v. Chicago Title Ins. Co., 743 F.2d 932 (D.C. Cir. 1984) (per curiam)). The Teleglobe Court explained that "'[t]he policy behind [the co-client privilege]—to encourage openness and cooperation between joint clients—does not apply to matters known at the time of communication not to be in the common interest of the attorney's two clients.'" Id. at 368-69 (quoting Eureka, 743 F.2d at 937). In

35

those circumstances, counsel's failure to avoid a conflict of interest should not deprive the client of the privilege.  Id. at 369.

Given the averments in the Complaint, especially those in Paragraphs 20 to 70, R.R. at 9a to 20a, it is very possible, perhaps likely, that sometime between 2009 and February 2013, any legal interests previously shared between the individual Plaintiffs/Appellees and the individual Defendants/Appellants had diverged too much to be viewed as "common."  Assuming for this point only that Plaintiffs/Appellees and Defendants/Appellants were co-clients, between themselves and with the corporations, a finding of *de facto* lack of common interest would obscure the legal basis for compelling disclosure of communications to and from a corporate attorney.

Second, the concept of "client" causes us to question the trial court's application of the common interest exception here.  The parties and the trial court agree that the nonprofit corporations are the "clients" entitled to assert any attorney-client privilege.  The United States Supreme Court, recognizing that corporations must act through persons, held in Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343 (1985), that control of the privilege passes with control of the corporation.  See also Teleglobe; Maleski v. Corporate Life Ins. Co., 641 A.2d 1 (Pa. Cmwlth. 1994).  It appears from averments in the Complaint that Defendants/Appellants have *prima facie* control of the nonprofit corporations.  Therefore, it is difficult to identify the co-clients of the corporations, such as to support application of the common interest (or adverse litigation) exception to the attorney-client privilege.

36

This is essentially the same approach taken by the <u>Garner</u> Court. While drawing an analogy to common interest situations, the Court realized the conceptual problems and crafted a more targeted exception to the attorney-client privilege in cases of derivative litigation. <u>Garner</u>, 430 F.2d at 1103-04.

As a result of all these concerns, we do not believe the common interest (or adverse litigation) exception adequately describes the relationship between the parties here. Similar to our conclusion with the fiduciary duty exception, we hold that a <u>Garner</u>-based exception is more in harmony with the current litigation.

## VI. Summary

Our collateral order review is limited to the extent the trial court's discovery order may require disclosure of legal opinions and advice otherwise privileged under the attorney-client privilege and work product protection. We hold that neither the fiduciary duty exception nor the common interest exception apply to support the trial court's broad discovery order. However, there is a potential <u>Garner</u>-based exception to the attorney-client privilege which could apply, but the trial court first needs to undertake a "good cause" evaluation. We caution that the breadth of legal advice and opinions potentially discovered under a <u>Garner</u> approach may be more confined than that envisioned by the trial court. AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13 cmt. e (1994); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §85 (2000). Similarly, we caution that the breadth of legal opinions discoverable as a result of the submission to the trial court of the

37

Investigating Committee's Report which includes a legal opinion may be more restricted than that envisioned by the trial court. AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13 cmt. e (1994). Finally, we caution that the work product doctrine protects the work product of the Investigating Committee's counsel regardless of the availability of the attorney-client privilege and a potential <u>Garner</u>-based exception. AM. LAW INST. PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS §7.13 cmt. f.

       For all these reasons, we vacate the trial court's discovery order and remand for further proceedings.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pittsburgh History and Landmarks   :
Foundation, a Pennsylvania Non-Profit  :
Corporation; Landmarks Financial    :
Corporation, a Pennsylvania Non-Profit :
Corporation; Henry P. Hoffstot, Jr.;    :
David E. Barensfeld; Peter H. Stephaich;:
Patrick R. Wallace; Alexander Speyer;  :
and Henry P. Hoffstot, III          :
                                   :   No. 113 C.D. 2016
Arthur P. Ziegler, Jr.; Mark S. Bibro;  :
and Jack R. Norris            :
                                   :
Pittsburgh History and Landmarks   :
Foundation, a Pennsylvania Non-Profit  :
Corporation; Landmarks Financial    :
Corporation, a Pennsylvania Non-Profit :
Corporation               :
                                   :
Appeal of: Arthur P. Ziegler Jr., Mark S.:
Bibro, Jack R. Norris, Pittsburgh History:
and Landmarks and Foundation    :
Landmarks Financial Corporation   :

## **O R D E R**

**AND NOW**, this 21ˢᵗ day of April, 2017, the Order dated September 18, 2015 and entered on September 21, 2015, is **VACATED**, and the matter is **REMANDED** for further proceedings.

Jurisdiction is relinquished.

                                      _____
                                      ROBERT SIMPSON, Judge